DA 13-0037

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 311

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

ROGER ALAN  HANTZ,

      Defendant and Appellant.


APPEAL FROM:    District Court of the Tenth Judicial District,
In and For the County of Fergus, Cause No. DC-2011-07
Honorable Randal I. Spaulding, Presiding Judge


COUNSEL OF RECORD:

      For Appellant:

          Chuck Watson, Watson Law Office, P.C.; Bozeman, Montana

      For Appellee:

          Timothy C. Fox, Montana Attorney General, Tammy A. Hinderman, Assistant Attorney General; Helena, Montana

          Thomas P. Meissner, Fergus County Attorney, Jean Adams, Deputy County Attorney; Lewistown, Montana


                    Submitted on Briefs:  September 18, 2013
                                Decided:  October 22, 2013

Filed:

                                Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1     Roger Alan Hantz (Hantz) appeals his conviction from the Tenth Judicial District, Fergus County.  We affirm.

¶2     We address the following issues on appeal:

     1.     *Whether Montana's sexual abuse of children statute, § 45-5-625(1)(c), MCA, sweeps too broadly in violation of the First Amendment and the Commerce Clause?*

     2.     *Whether the District Court properly authenticated and admitted extensive internet chat logs into evidence?*

## PROCEDURAL AND FACTUAL BACKGROUND

¶3     Fergus County Deputy Sheriff Troy D. Eades (Eades) conducted an online investigation of child enticement as part of the Internet Crimes Against Children Task Force (ICACTF).  Eades represented himself as "Lissa," a 14-year-old female from Montana. The 50-year-old Hantz lived in Fremont, California.  Hantz first contacted Lissa on November 10, 2010.

¶4     Hantz found Lissa through the teenage-oriented social networking website TeenSpot.com.  Hantz initially contacted Lissa through TeenSpot.com's instant messaging system.  Hantz asked Lissa her age, gender, and location.  Lissa responded that she was a 14-year-old female from Montana.  Hantz moved his conversation with Lissa from the TeenSpot.com instant messenger service onto the Yahoo instant messaging service.

¶5     The tone of Hantz's conversation with Lissa changed quickly on the Yahoo instant messaging service.  Hantz asked Lissa if she had seen a man naked, or if she had been naked with a man.  Hantz told Lissa that he wanted to get naked with her.  Hantz wanted to

2

masturbate while Lissa watched on a webcam. Hantz asked Lissa for permission to masturbate while she watched. Lissa briefly and affirmatively responded to each of Hantz's statements and questions. Hantz shared his webcam feed with Lissa, and proceeded to masturbate on the live webcam feed.

¶6      Hantz asked Lissa to confirm that she was "really 14." Lissa answered yes, and then asked Hantz if he liked younger girls. Hantz replied with "oh yea." Hantz continued to ask Lissa about her sexual experiences. Hantz also made sexual references to Lissa. Shortly thereafter Hantz invited Lissa to join him in mutual masturbation. Hantz expressed his wish that Lissa had a webcam so that he could watch her.

¶7      Hantz chatted online with Lissa ten times over the next four months. Each conversation proceeded similarly to the November 10, 2010, conversation. Each conversation included references to Hantz masturbating. Hantz broadcasted his masturbation over his webcam several times. Hantz made references to sexual activities with younger females during this time. Hantz claimed to have had sexual intercourse with a 17-year old female named "lori."

¶8      Hantz engaged in five chats with Lissa during February 2011. Hantz requested that Lissa remove her clothing several times over the course of these chats. Hantz also directed to Lissa to masturbate in each of these chats. Hantz lastly made several references to his potential plans to travel to Montana to meet Lissa in person. Hantz apparently intended to engage in various sexual activities with Lissa.

¶9 Eades obtained an arrest warrant for Hantz based on Hantz's potential travel plans. A Fremont, California detective, who also served as a member of the ICACTF, arrested Hantz on February 25, 2011. The Fremont police informed Hantz that they had an arrest warrant for him from Montana. Hantz claimed that there had been a misunderstanding, and that he "didn't do anything."

¶10 The Fremont police confiscated Hantz's computer. The Fremont police found evidence of a search for airline tickets on the internet travel site Priceline.com for a flight from San Jose, California to Great Falls. The Fremont police also found copies of each of the online chats between Hantz and Lissa.

¶11 The Fremont police further found records of online chats between Hantz and other online personas who had represented themselves as female minors. These collateral chats had occurred during the same time period as Hantz's chats with Lissa. Each of the collateral chats generally followed the same pattern as Hantz's online chats with Lissa.

¶12 The State of Montana (State) charged Hantz on February 24, 2011, with two counts of felony sexual abuse of children, in violation of § 45-5-625(1)(c), MCA. The State specifically charged Hantz with two counts of knowingly having counseled Lissa, a person online whom Hantz had believed to be a 14-year-old female, to remove her clothing and engage in "masturbatory conduct."

¶13 Hantz sought to dismiss both charges on the basis that § 45-5-625(1)(c), MCA, unconstitutionally limited his freedom of speech as protected by both federal and state constitutions due to the statute's overbreadth, both on its face and as applied to his conduct.

4

Hantz further claimed that § 45-5-625(1)(c), MCA, violated the federal Commerce Clause. The District Court denied Hantz's motion in a written order.

¶14 Hantz filed a motion in limine to exclude the collateral chats. Hantz apparently never filed a brief in support of his motion in limine. The District Court denied Hantz's motion before trial. Hantz proceeded to trial.

¶15 The State requested permission to introduce the collateral chats between Hantz and the other online personas on the third day of trial. The District Court reviewed the 2,500 pages of online chat conversations outside the jury's presence. The District Court characterized the 2,500 pages of online chat conversations as "non-testimonial in nature" and therefore determined the chats "c[ould] be admitted without running afoul of the confrontation clause." The District Court then determined that the 2,500 pages could be offered "to establish motive, intent or absence of mistake."

¶16 Hantz objected to the admission of any collateral chats that involved persons other than Lissa on the basis that admission of the chats would be cumulative evidence. The District Court determined that a cautionary instruction would remedy any potential prejudice. The District Court delivered the cautionary instruction over Hantz's objection.

¶17 Hantz claimed at trial that he thought that he had been "role playing" with an adult woman in the online chat. Hantz claimed that he thought the adult woman with whom he had been chatting merely pretended to be a 14-year-old. The jury found Hantz guilty of both counts. Hantz appeals.

## STANDARD OF REVIEW

¶18    This Court exercises plenary review of constitutional issues. *DeVoe v. City of Missoula*, 2012 MT 72, ¶ 12, 364 Mont. 375, 274 P.3d 752. We review for correctness a district court's decisions on constitutional issues. *DeVoe*, ¶ 12. Statutes enjoy a presumption of constitutionality. *DeVoe*, ¶ 12. The party who challenges the constitutionality of a statute bears the burden of proof. *DeVoe*, ¶ 12.

¶19    We review for abuse of discretion a district court's evidentiary rulings. *State v. Bishop*, 2012 MT 259, ¶ 31, 367 Mont. 10, 291 P.3d 538. A district court abuses its discretion if it acts arbitrarily without conscientious judgment or exceeds the bounds of reason, resulting in a substantial injustice. *Bishop*, ¶ 31.

## DISCUSSION

¶20    *Whether Montana's sexual abuse of children statute, § 45-5-625(1)(c), MCA, sweeps too broadly in violation of the First Amendment and the Commerce Clause?*

¶21    Hantz asserts that Montana's sexual abuse of children statute, § 45-5-625(1)(c), MCA, sweeps too broadly when it criminalizes any means of communication that serve to induce a child under 16 to engage in sexual conduct. Section 45-5-625(1)(c), MCA, provides that a person commits the offense of sexual abuse of children if the person knowingly "persuades, entices, counsels, or procures a child under 16 years of age or a person the offender believes to be a child under 16 years of age to engage in sexual conduct, actual or simulated." Section 45-5-625(1)(c), MCA. Section 45-5-625(5)(b)(i)(D), MCA, specifically defines sexual conduct to include actual or simulated masturbation.

6

¶22 A challenged statute's overbreadth must be both real and substantial when judged in relation to a statute's plainly legitimate sweep. *State v. Nye*, 283 Mont. 505, 515, 943 P.2d 96, 103 (1997); *State v. Ross*, 269 Mont. 347, 353, 889 P.2d 161, 164 (1995). Hantz must show that the alleged overbreadth presents both "real" and "substantial" threats to speech that adults have a constitutional right to receive and to address, both as applied to himself and to others. Hantz concedes that Montana's sexual abuse of children statute serves a plainly legitimate purpose: to protect children from sexual predators and sexual exploitation. Hantz must demonstrate, therefore, that § 45-5-625(1)(c), MCA, would have a real and substantial effect on any speech beyond the statute's legitimate purpose. *Nye*, 283 Mont. at 515, 943 P.2d at 103; *Ross*, 269 Mont. at 353, 889 P.2d at 164.

¶23 Hantz asserts that the term "counsels" in § 45-5-625(1)(c), MCA, serves to "criminaliz[e] constitutionally protected speech because the law as written, even with the 'knowingly' element" fails to distinguish between lawful and unlawful conduct. Hantz points to various online publications that § 45-5-625(1)(c), MCA, allegedly would cover. Hantz includes the masturbation section of Columbia University's *Go Ask Alice* Health Services online question and answer database, the Planned Parenthood *Info for Teens* website and its guidance regarding masturbation, and others in his list. Hantz suggests that the detailed information provided by these websites about "sexuality, sex education, and 'how to' discussions" for masturbation would fall within the purview of § 45-5-625(1)(c), MCA.

7

¶24     Hantz's argument that websites that broadly provide sexual information fall within the purview of § 45-5-625(1)(c), MCA, fails to account for the "knowingly" element of § 45-5-625(1)(c), MCA. By its own terms Montana's sexual abuse of children statute applies only to those who "knowingly" persuade, entice, counsel, or procure a child to engage in sexual activity. The statute applies only when a sender transmits a message with the intent that a minor will view that communication. *Reno v. Am. Civil Liberties Union*, 521 U.S. 844, 876, 117 S. Ct. 2329, 2347 (1997). As the Supreme Court recognized in *Reno*, "the sender must be charged with knowing that one or more minors will likely view [the message]" in light of the size of the potential audience for most messages and the absence of a viable age verification process. *Reno*, 521 U.S. at 876, 117 S. Ct. at 2347.

¶25     The criminal act occurs, therefore, when an offender sends a message with the knowing intent to cause a minor to engage in sexual activity. Montana's sexual abuse of children statute does not reach those who draft, publish, or distribute publications that discuss human sexuality for a wide audience. Section 45-5-625(1)(c), MCA, likewise does not apply to those who post information regarding human sexuality for all internet users, either adults or children, to seek out and read at their discretion. The statute restricts no particular content. The statute prohibits no particular viewpoints. Section 45-5-625(1)(c), MCA, prohibits only a knowing communication with a minor that encourages the minor to engage in sexual activity.

¶26     This knowing communication element of Montana's sexual abuse of children statute prohibits application of the statute to broad communications to a general audience that may

8

include minors. Hantz attempts to blur the line between a person who directly and clearly counsels a minor to engage in sexual conduct, and broad-based communicating about, regarding, or concerning human sexuality. The knowing communication requirement of § 45-5-625(1)(c), MCA, narrowly tailors the statute's reach to apply only to conduct that would contravene the State's interest in protecting children from online sexual predators.

¶27 Hantz next argues that § 45-5-625(1)(c), MCA, sweeps overbroadly as applied to his conduct. Hantz argues that application of Montana's sexual abuse of children statute to situations when an actor "was not present, had no physical contact with the underage individual, and any self masturbation [sic] was not used in any film or media" fails to serve the statute's legislative purpose. Hantz argues that applying the statutory language to his alleged "virtual fantasy with no intention . . . of making it anything else" extends Montana's sexual abuse of children statute beyond constitutional validity.

¶28 An "as applied" challenge to the constitutional validity of a statute focuses upon whether the statute is too vague to apply in a particular situation. *Nye*, 283 Mont. at 516, 943 P.2d at 103. We will not strike the statute for vagueness if the challenged statute appears reasonably clear in its application. *Nye*, 283 Mont. at 516, 943 P.2d at 103. We confine our "as applied" overbreadth evaluation to a determination of whether the statute reaches constitutionally protected conduct. *State v. Dugan*, 2013 MT 38, ¶ 52, 369 Mont. 39, 303 P.3d 755

¶29 Hantz's effort to entice Lissa, a person whom Hantz believed to be a 14-year-old girl, to engage in simultaneous masturbation over the internet clearly falls within the prohibition

9

of § 45-5-625(1)(c), MCA. The State charged Hantz with knowingly counseling Lissa to engage in sexual conduct. The jury found Hantz guilty of violating the statute's prohibition on knowingly counseling a person under the age of 16 to engage in sexual conduct. Hantz fails to identify any unclear application of the statute to his conduct. Neither the U.S. Constitution nor the Montana Constitution provides protection for Hantz's actions.

¶30 Hantz further argues that § 45-5-625(1)(c), MCA, violates the dormant Commerce Clause. The Commerce Clause grants Congress the power "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." U.S. Const. art. I, § 8, cl. 3. Dormant Commerce Clause jurisprudence interprets the federal Commerce Clause to prohibit implicitly certain state actions "that interfere with interstate commerce." *Quill Corp. v. N.D. ex rel. Heitkamp*, 504 U.S. 298, 309, 112 S. Ct. 1904, 1911 (1992).

¶31 Hantz relies primarily on *American Libraries Association v. Pataki*, 969 F.Supp. 160 (S.D.N.Y.1997), to support his dormant Commerce Clause argument. The federal court in *Pataki* invalidated a New York statute that prohibited the intentional use of the internet to communicate pornography to children. *Pataki*, 969 F.Supp. at 169. The federal court determined that the internet's lack of "geographic distinctions" included the internet in the realm of interstate commerce. *Pataki*, 969 F.Supp. at 170. The federal court feared that inconsistent legislation, "taken to its most extreme, could paralyze development of the [i]nternet altogether," despite the fact that New York had acted in its traditional role to protect minors and to enforce state laws. *Pataki*, 969 F.Supp. at 169.

¶32     The federal court enjoined enforcement of the New York statute in *Pataki* because the federal court believed that internet content providers outside of New York might violate the statute unintentionally. *Pataki*, 969 F.Supp. at 174-76. This hypothetical result could burden interstate commerce because the New York statute might chill internet content providers' activities, even though the content providers were operating legally in their own states. *Pataki*, 969 F.Supp. at 174-76. The federal court determined that the states' varying approaches to pornographic communications could subject a single actor "to haphazard, uncoordinated, and even outright inconsistent regulation by states that the actor never intended to reach and possibly was unaware were being accessed." *Pataki*, 969 F.Supp. at 168-69.

¶33     The reasoning in *Pataki* fails to protect Hantz's conduct from the reach of Montana's statute. Section 45-5-625(1)(c), MCA, requires a person to act "knowingly" when he seeks to persuade, entice, counsel, or procure a minor to engage in an illegal sex act. The knowing requirement of the statute greatly narrows the scope of the law and its effect on interstate commerce. We conceive of no legitimate commerce, interstate or otherwise, that involves a person who acts "knowingly" when he seeks to persuade, entice, counsel, or procure a minor to engage in an illegal sex act.

¶34     Section 45-5-625(1)(c), MCA, likewise regulates no behavior that occurs wholly outside of Montana. Montana may prosecute only those criminal acts that occur within Montana. Section 45-1-104(2), MCA. The narrow focus of § 45-5-625(1)(c), MCA, further reduces concerns regarding inconsistent regulation. The federal court in *Pataki* concluded

11

that "an Internet user cannot foreclose access to her work from certain states or send differing versions of her communications to different jurisdictions." *Pataki*, 969 F.Supp. at 183. Section 45-5-625(1)(c), MCA, proscribes knowing communication with a minor for purposes of illegal sexual activity, and nothing else.

¶35 The underlying assumption of *Pataki* that a ban on "communications" may interfere with an adult's legitimate free speech rights does not apply to a ban on a person acting "knowingly" when he seeks to persuade, entice, counsel, or procure a minor to engage in an illegal sex act. The State's effort to prevent a knowing communication by an adult with a person under 16 that focuses upon illegal sexual conduct constitutes a permissible regulation of commerce that fails to infringe unlawfully upon "[c]ommerce . . . among the several states." U.S. Const. art. I, § 8, cl. 3.

¶36 *Whether the District Court properly authenticated and admitted extensive internet chat logs into evidence?*

¶37 Hantz argues that the District Court committed reversible error when it admitted the collateral chats. Hantz specifically alleges that the prejudice of the collateral chat logs outweighs their probative value due to the 2,500 page length of the collateral chats. Hantz further alleges that the State failed to lay a proper foundation to admit the evidence due to the State's failure to prove that Hantz actually had chatted with underage girls, or merely had chatted with adults who held themselves out to be underage girls.

¶38 "[E]vidence sufficient to support a finding that the matter in question is what its proponent claims" properly authenticates an evidentiary offer. M. R. Evid. 901(a). The State offered the collateral chats as evidence of sexually explicit online chats between Hantz

and other personas who held themselves out to be young girls. The State did not need to prove the actual identity of the other personas. The State provided evidence sufficient for the District Court to determine that the collateral chats involved Hantz and personas who held themselves out as young girls. The nature of the chats showed that Hantz had engaged in sexually explicit chats with other personas who had held themselves out to be young girls. The State properly authenticated the evidentiary offer of the collateral chats.

¶39     Montana Rule of Evidence 404(b) governs the admissibility of other crimes, wrongs, or acts. A district court possesses discretion when it determines whether other crimes evidence should be admissible under M. R. Evid. 404(b). *State v. Berosik*, 2009 MT 260, ¶ 28, 352 Mont. 16, 214 P.3d 776. Generally, evidence of a defendant's prior acts or crimes "is not admissible to prove the character of a person in order to show action in conformity therewith." M. R. Evid. 404(b). Evidence of a defendant's prior acts or crimes may be admissible for other purposes, such as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." M. R. Evid. 404(b).

¶40     Hantz earlier had filed a series of motions in limine to exclude various items of potential evidence pursuant to M. R. Evid. 404(b). One of Hantz's motions requested that the District Court exclude any "written statement in the possession of any agency involved in the investigation of this case." The motion denoted evidence "in the form of chats." Hantz's motion did not identify any specific chats for the District Court to evaluate. Hantz's motion further failed to advance any legal theory to exclude any particular chats. Hantz apparently

13

also failed to file a brief in support of his motion in limine, despite claiming that he would do so during a July 26, 2012, pretrial conference.

¶41 The District Court denied Hantz's motion in limine based upon Hantz's failure to "specifically identif[y] what statements [he] finds objectionable or how such statements constitute evidence of other crimes, wrongs, or acts." The District Court determined that Hantz had failed to cite any legal authority to support the exclusion of any written statements "in the form of chats." The District Court further noted Hantz's failure to "demonstrate[] with argument or authority why the statements should be excluded." We decline to require more precise findings of fact and conclusions of law when a defendant fails to raise an argument sufficiently specific to allow a district court to conduct a meaningful review of the evidence in question. *State v. Dist. Court of Eighteenth Judicial Dist. of Montana*, 2010 MT 263, ¶ 49, 358 Mont. 325, 246 P.3d 415.

¶42 Hantz objected again at trial when the State sought to introduce the collateral chats. Hantz took exception to the potential cumulative nature of the chats. The District Court noted that Hantz had failed again to "cite any authority," or to "identify any of the specific information at issue" when he raised his objection during trial. The District Court identified the difficult circumstances that Hantz's objection created during a hearing in chambers: "the Court finds itself in the middle of the trial now, on the third day, trying to make an assessment of the 404(b) factors."

¶43 Hantz proffered the suggestion that the Court allow "whoever wants to testify about [the collateral chats], to testify that there were chats with other [sic]," to obviate Hantz's

"cumulativeness" concerns. The District Court declined Hantz's invitation. The District Court determined that computer "gobbly gook" constituted most of the 2,500 pages of collateral chats. The District Court further determined that the State had "parsed out the parts involving the chats." The District Court concluded that Hantz's "404(b) type motion [wa]s not in time, [and] that [Hantz] didn't properly brief it."

¶44 The District Court articulated its rationale to admit the collateral chats: "the facts contained in these documents[] undermined the defense's claim that Mr. Hantz's chats were harmless fantasy." The District Court set the prosecution "at liberty to offer this into evidence." Upon admission of the evidence the District Court admonished the jury that the State's collateral chat "evidence is not admitted to prove the character of the Defendant or to show that he acted in conformity therewith. The only purpose of admitting this evidence is to show identity knowledge and/or intent." The District Court further told that jury that "[y]ou may not use this evidence for any other purpose. The Defendant is not being tried for the other crimes, wrongs or acts." A limiting instruction generally cures any unfair prejudice. *Dist. Court of Eighteenth Judicial Dist.*, ¶ 49.

¶45 Hantz suggests that District Court's ruling prejudiced him because "there is a distinct likelihood that the jury convicted Hantz based on his being merely suspicious and indifferent about [Lissa]'s age, rather than on a factual determination." We disagree. Hantz filed a broad motion in limine that did not identify specific documents to be excluded, the legal basis for excluding any of the collateral chats, or the reasons why the prejudice caused to Hantz from the admission of specific documents outweighed the probative value of those

15

documents.  Moreover, Hantz testified at trial that he believed that Lissa was an adult and that the two of them simply had been "role playing" that she was a minor and that he wanted to engage in sexual activities with her.  As the District Court recognized, Hantz's defense strategy entitled the State to use the collateral chats to demonstrate motive, intent, and absence of mistake on Hantz's part as to the age of the person to whom he had been chatting.  *State v. Guill*, 2010 MT 69, ¶ 39, 355 Mont. 490, 228 P.3d 1152.

¶46    Affirmed.

/S/ BRIAN MORRIS

We concur:


/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ MICHAEL E WHEAT
/S/ LAURIE McKINNON