CHIEF JUSTICE McGRATH
delivered the Opinion of the Court.
¶1 Jason Dean Franks appeals from his conviction of felony sexual intercourse without consent in the Eleventh Judicial District Court, Flathead County. We reverse and remand for a new trial.
¶2 On appeal, we address whether the District Court abused its discretion when it denied Franks’s motion for a new trial.
PROCEDURAL AND FACTUAL BACKGROUND
¶3 On December 28, 2010, fifteen-year-old C.L. told her father that his former roommate, Jason Franks, had raped her when she" was eleven years old. The next day, C.L. and her father went to the Kalispell Police Department to report the allegation. During a forensic interview on January 11,2011, C.L. told Detective Michelle O’Neil that she decided to come forward after four years because of a newspaper article reporting Franks had been accused of molesting a five-year-old boy. The article, published December 3, 2010, was accompanied by a photograph of Franks, which C.L. recognized. C.L. told Detective O’Neil she wanted to help in that case if she could.
¶4 On May 16, 2011, Franks was charged with sexual intercourse without consent and sexual assault. Before tried, Franks moved to *433 exclude any mention of the charges in Cause No. DC-10-444(B), the case reported in the newspaper, as more prejudicial than probative under M. R. Evid. 403 and improper character evidence under M. R. Evid. 404(b). Franks pointed out he was acquitted of those charges. The State responded it intended to offer testimony explaining that C.L.’s delayed disclosure was prompted by the newspaper article. The State explained it also intended to offer expert testimony about disclosure patterns in child sexual abuse cases, and this expert testimony, combined with testimony about the newspaper article, would help the jury understand why C.L. disclosed when she did. The District Court held a hearing on the motion and concluded the testimony was not offered as evidence of Franks’s character, but rather to explain C.L.’s disclosure, and therefore was admissible. The District Court said Franks could offer evidence he was acquitted of the charges in order to counteract any unfair prejudice.
¶5 After multiple continuances, trial began November 5,2012. The prosecutor made the following reference to the newspaper article during his opening statement:
You’ll hear from [C.L.], who will state that the reason that she disclosed, finally and fully came forth, was because Jason Franks was in the newspaper. There was an article, and he was accused of raping a little boy, age four or five. And [C.L.] saw the newspaper article, which had a picture of Jason Franks, and it brought everything back home. She recognized him, down to the scar on his face, and suddenly she thought, “I’ve got to come forward to see if I can have an impact in that case.”
¶6 C.L. testified that before seeing the newspaper article, she had disclosed the incident to her best friend, D.B.; another close friend, A.A.; her boyfriend, R.A.; and D.B.’s father. She testified that after a discussion with D.B.’s father, she started to think about telling her own father. C.L. was asked whether a newspaper article also helped her come forward. She responded, “I wouldn’t say it helped me come forward. It gave me a bigger visual of everything, that I wasn’t the only one.” C.L. testified she could not remember whether she saw the newspaper article before talking to her dad, but “it was close in the time frame.” She later testified she told Detective O’Neil that after seeing the newspaper article, “I knew that there was... another person that had had the same thing done to them that was done to me....” She testified she told Detective O’Neil she wanted to help in that case. Detective O’Neil also testified that C.L. brought up the newspaper article during the forensic interview, and said her reason for coming forward at that time was to help in that case.
*434 ¶7 Franks then testified in his defense and denied the allegations. He testified that his picture had been in the newspaper because he had been charged with sexually assaulting his girlfriend’s son. He testified that he had been tried and found not guilty of those charges by a jury. On cross-examination, the prosecutor asked Franks whether he heard his attorney state, during jury selection, “that not guilty doesn’t mean innocent.”
¶8 Prior to closing argument, the jury was instructed that evidence about the newspaper article was admitted only to show why C.L. decided to disclose the incident, and could not be used for any other purpose. During closing argument, the prosecutor stated:
Boy, is [C.L.] lucky that a guy named Jason Franks, who happened to be her dad’s roommate, is in the paper, accused of molesting a little boy. What are the odds?
What are the odds that the fall guy that she just happened to list, named Jason, my dad’s roommate, shows up in the paper? Is he an easy target because of the paper, or is he the target because he did this?
¶9 Franks was convicted of both sexual intercourse without consent gmd sexual assault. He moved for a new trial and acquittal. He claimed the testimony at trial failed to bear out the prosecution’s theory that the newspaper article had prompted C.L.’s disclosure, because her testimony revealed she had already told friends about the incident before seeing the newspaper article. He claimed the unfair prejudice caused by testimony about the newspaper article far outweighed its probative value. He also argued that the conviction was not supported by sufficient evidence, and that his conviction of both sexual intercourse without consent and sexual assault violated due process and subjected him to double jeopardy.
¶10 By stipulation, the District Court vacated the sexual assault conviction. The District Court denied the motion with respect to the remaining issues. The District Court reasoned that despite some conflicts in the testimony, there was evidence showing the newspaper article motivated C.L’s disclosure. The District Court also said the jury instruction and evidence of Franks’s acquittal on the prior charges served to counteract any possible prejudice. The District Court stated that testimony about the newspaper article did not deny Franks a fair and impartial trial. The District Court also concluded there was sufficient evidence supporting the conviction. Franks was sentenced to fifty years in the Montana State Prison, with ten years suspended.
*435 STANDARD OF REVIEW
¶11 A district court’s denial of a motion for a new trial is reviewed for abuse of discretion. State v. Brummer, 1998 MT 11, ¶ 49, 287 Mont. 168, 953 P.2d 250. A district court abuses its discretion when it acts arbitrarily, without conscientious judgment, or exceeds the bounds of reason. State v. Hernandez, 2009 MT 341, ¶ 7,353 Mont. 111, 220 P.3d 25.
DISCUSSION
¶12 Whether the District Court abused its discretion when it denied Franks’s motion for a new trial.
¶13 Following a verdict of guilty, a district court may order a new trial “if required in the interest of justice.” Section 46-16-702, MCA. The court may order a new trial either on motion of the defendant or of its own accord, pursuant to its inherent powers. Brummer, ¶ 35. Franks moved for a new trial on the grounds that evidence of prior charges of child molestation should have been excluded under M. R. Evid. 404(b) and was more prejudicial than probative under M. R. Evid. 403. He claimed these errors denied him the right to a fair and impartial trial. ¶14 As a general rule, character evidence is not admissible to prove conduct. M. R. Evid. 404; State v. Dist. Ct. of the Eighteenth Judicial Dist., 2010 MT 263, ¶ 47, 358 Mont. 325, 246 P.3d 415. Evidence of other crimes, wrongs, or acts may not be admitted to prove a person’s character in order to show that he or she acted in conformity with that character on a particular occasion. M. R. Evid. 404(b); State v. Stewart, 2012 MT 317, ¶ 61, 367 Mont. 503,291 P.3d 1187. The evidence may, however, be used for “other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.” M. R. Evid. 404(b). Rather than prohibiting the admission of evidence, M. R. Evid. 404(b) prohibits a theory of admissibility. Eighteenth Judicial Dist., ¶ 47. Evidence of prior bad acts is not admissible if it is offered for a purpose that requires “the inference from bad act to bad person to guilty person,” Eighteenth Judicial Dist., ¶ 47, but may be admissible if it “ ‘proves a material issue without requiring any inference to the defendant’s criminal disposition,’ ” Stewart, ¶ 61 (quoting 22A Charles Alan Wright & Kenneth W. Graham, Jr., Federal Practice and Procedure: Evidence § 5239, 260 (Supp. 2012)).
¶15 Even if evidence of other crimes, wrongs, or acts is offered for a valid non-propensity purpose, M. R. Evid. 404(b) may require its exclusion if “the nature of the evidence might tempt the jury to decide *436 the case against the defendant on an improper propensity basis.” Stewart, ¶ 62. Evidence of other crimes, wrongs, or acts may unduly prejudice the jury against the defendant, regardless of the purpose for which the evidence is nominally admitted. See State v. Sage, 2010 MT 156, ¶ 36, 357 Mont. 99, 235 P.3d 1284. In this way, M. R. Evid. 404(b) must be viewed in concert with M. R. Evid. 403, which allows the exclusion of relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice. Evidence that is offered for a valid purpose under M. R. Evid. 404(b) is still subject to the balancing test prescribed by M. R. Evid. 403. Stewart, ¶ 67.
¶16 Unfair prejudice may arise from evidence that arouses the jury’s hostility or sympathy for one side, confuses or misleads the trier of fact, or unduly distracts the jury from the main issues. State v. Bieber, 2007 MT 262, ¶ 59, 339 Mont. 309, 170 P.3d 444. Where the probative value of evidence is substantially outweighed by its unfair prejudice, admission of the evidence may be reversible error. State v. Pendergrass, 179 Mont. 106, 112-13, 586 P.2d 691, 694-95 (1978). In certain circumstances, the nature of the prejudicial material introduced may so severely undermine the fairness of the trial that a new trial is the only remedy. Havens v. State, 285 Mont. 195, 200-01, 945 P.2d 941, 944 (1997) (ordering new trial in civil case pursuant to § 25-11-102, MCA, and M. R. Civ. P. 59(a)).
¶17 In its ruling on Franks’s motion in limine, the District Court found testimony about the newspaper article relevant because it explained C.L.’s reason for disclosing the incident after four years. The evidence would be offered for a purpose other than to show Franks’s character, and thus M. R. Evid. 404(b) did not require its exclusion. The “highly inflammatory” nature of child molestation evidence, however, required the District Court and the State to tread with caution. State v. Van Kirk, 2001 MT 184, ¶ 46, 306 Mont. 215, 32 P.3d 735; see also United States v. Ham, 998 F.2d 1247, 1252 (4th Cir. 1993) (“Indeed, no evidence could be more inflammatory or more prejudicial than allegations of child molestation.”).
¶18 As the District Court noted in its ruling on Franks’s motion for a new trial, the testimony regarding the timing of and reasons for C.L.’s disclosure was, in some respects, contradictory. Nevertheless, there was testimony supporting the State’s theory of admissibility. C.L. testified that she told Detective O’Neil she wanted to help in the prosecution of the case reported in the newspaper. Detective O’Neil testified that C.L. said, during the forensic interview, that the other case was her reason for coming forward. Testimony also established *437 that C.L. disclosed the incident to her father on December 28, more than three weeks after the article was published on December 3. The testimony presented at trial did in fact help to explain why C.L. disclosed the abuse to her father and to police in December 2010.
¶19 It is apparent, however, that the State did not limit its use of the testimony to explaining the timing of C.L.’s disclosure. In his opening statement, the prosecutor stated Franks was “accused of raping a little boy.” After Franks testified he had been acquitted of those charges, the prosecutor asked if he heard his attorney state “that not guilty doesn’t mean innocent.” This question implied to the jury that, rather than being innocent until proven guilty, Franks was a serial child molester who had simply gotten away with it. The prosecutor later commented on “the odds” of Franks showing up in the newspaper, “accused of molesting a little boy.” This comment strengthened the implication that Franks was a child molester and therefore more likely to have assaulted C.L.
¶20 The State’s use of the evidence aroused the jury’s hostility toward Franks, resulting in unfair prejudice. See Bieber, ¶ 59. The District Court’s instruction to the jury that they were not to consider testimony about the newspaper article for any purpose other than to explain C.L.’s disclosure was not sufficient to protect the defendant from undue prejudice in the face of the State’s repeated insinuations. See Sage, ¶ 42. Similarly, the value of allowing Franks to testify that he was acquitted of the prior charges was negated by the State’s cross-examination, which showed frank disregard for the right of a criminal defendant to be presumed innocent until proven guilty. Section 46-16-204, MCA.
¶21 Based on the information and arguments presented to the District Court at the motion in limine stage, and given the overwhelmingly prejudicial nature of child molestation evidence, the wiser course would have been to withhold ruling on its admissibility. The issue could have been revisited in the event that the delayed disclosure became an issue for C.L.’s credibility.
¶22 When ruling on Franks’s motion for a new trial, however, the District Court had the full benefit of hindsight, and knew exactly the manner in which the State had manipulated the District Court’s attempted safeguards and used the evidence to create the impression that Franks was a habitual abuser of children. Clearly, the probative value of this evidence was outweighed by the danger of unfair prejudice and should have been excluded under M. R. Evid. 403. See Pendergrass, 179 Mont. at 112-13, 586 P.2d at 694-95. To hold that *438 introduction of the evidence did not deny Franks a fair and impartial trial was an abuse of discretion. See Havens, 285 Mont. at 200-01, 945 P.2d at 944 (“[I]n the context of a motion for a new trial, the court should have reconsidered its prior ruling....”). Therefore, we reverse and remand for a new trial.
¶23 Because we have already determined Franks’s conviction must be reversed, we need not address the remaining issues raised in his appeal.
JUSTICES COTTER, WHAT, BAKER and SHEA concur.