FILED

June 30 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 13-0509

DA 13-0509

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 184

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

DONALD WAYNE PULST,

      Defendant and Appellant.

APPEAL FROM:     District Court of the Twelfth Judicial District,
In and For the County of Liberty, Cause No. DC-12-03
Honorable Daniel A. Boucher, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Wade Zolynski, Chief Appellate Defender; Jennifer A. Hurley, Assistant
Appellate Defender; Helena, Montana

      For Appellee:

          Timothy C. Fox, Montana Attorney General; Brenda K. Elias, Assistant
Attorney General; Helena, Montana

          Ole Olson, Joel Thompson, Special Deputy County Attorneys; Helena
Montana

          Hugh B. Brown, Liberty County Attorney; Chester, Montana

                Submitted on Briefs:  May 6, 2015
                           Decided:  June 30, 2015

Filed:

_____
Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1      Donald Pulst (Pulst) appeals from the judgment of the Montana Twelfth Judicial District Court, Liberty County, convicting him of sexual assault, sexual intercourse without consent, and indecent exposure. We affirm in part, reverse in part, and remand for proceedings consistent with this Opinion.

## ISSUES

¶2      We review the following issues:

*1. Did the District Court abuse its discretion by admitting evidence of uncharged acts of sexual assault allegedly committed by Pulst?*

*2. Did the District Court abuse its discretion by excluding evidence that K.S. was physically abused by her husband several years after the sexual assaults?*

*3. Did the District Court err by imposing a written sentence that was inconsistent with the sentence it orally pronounced?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3      A.B. was born in 1988 to her mother, J.B. Although she lived in Washington until she was 15 years old, A.B. and her family visited Montana frequently during her childhood, traveling to Chester, Montana several times per year to visit A.B.'s grandparents, uncles, aunts, and cousins.

¶4      During the visits, Pulst, who is A.B.'s uncle, would take A.B. on drives in his vehicle and sexually assault her. Pulst took A.B. on drives several times per year while A.B. was between 7 and 11 years old. During each drive, Pulst would place her on his lap, allow her to operate the steering wheel, and then sexually assault her while she did

2

so. Pulst's actions hurt A.B. and made her feel uncomfortable, but Pulst instructed A.B. not to tell anyone about his actions, and A.B. remained silent for several years.

¶5 When A.B. was about 11 years old she began attending sexual education classes at her school and discussing sexual education topics with her parents. She was instructed and warned about sexual harassment, sexual assault, and sexual predators, and A.B. began to realize that what Pulst had been doing to her was wrong. However, she initially chose not to tell anyone about what Pulst had done to her. Instead, believing that she "had [her] own power to make it stop," she resolved to no longer take drives with Pulst.

¶6 During December 1999, Pulst visited Washington. While he was there, he stayed with A.B.'s family in their home. On the last night of his visit, A.B. reported that Pulst sexually assaulted her in her bedroom. (This event will hereinafter be referred to as the "Washington Assault.") A.B. later stated that after this assault she realized that she would not be able to simply remove herself from certain situations and avoid being sexually assaulted by Pulst. That night, A.B. told her mother, J.B., about the assault and about similar assaults that had occurred during their visits to Montana.

¶7 J.B. confronted Pulst about A.B.'s allegations soon thereafter, and she told Pulst that she would report him to the police if he did not do so himself. Pulst reported A.B.'s allegations to the Liberty County Sheriff's Office soon thereafter. J.B. also told her sister, W.D., about Pulst's inappropriate contact with A.B. In response, W.D. spoke with her own daughter, K.S. She reminded K.S. that it was inappropriate for anyone other than her doctor to touch her in certain places, and in response K.S. reported that Pulst had sexually assaulted her.

3

¶8  K.S., who lived in Chester, Montana, had frequent contact with Pulst. Beginning when K.S. was four or five years old, Pulst would take K.S. on drives and allow her to operate the steering wheel. As with A.B., Pulst would place K.S. on his lap and sexually assault her during these drives. K.S. also reported that Pulst had masturbated in front of her and her brother and that Pulst had, on at least one occasion, removed K.S.'s underwear and digitally penetrated her vagina.

¶9  The Liberty County Sheriff's Office investigated these and other allegations after they were made in early 2000. For reasons that are not clear from the record, no criminal charges were pursued until 2012, when police were again informed by a family member that Pulst had been accused of molesting A.B. and K.S.

¶10  On June 5, 2012, the State filed an information in the District Court charging Pulst with sexual assault, sexual intercourse without consent, and indecent exposure. He had been interviewed by Department of Justice agents several weeks earlier. Consistent with statements he made in 2000, Pulst did not dispute A.B.'s and K.S.'s allegations. Pulst even went so far as to say that he did not think either A.B. or K.S. would lie about the allegations. He did claim, however, that if he had committed acts of sexual assault, he did not remember them.

¶11  On October 19, 2012, Pulst filed a motion to suppress evidence of the Washington Assault at trial. Pulst claimed that the evidence was not relevant and, in the alternative, that any probative value the evidence had was substantially outweighed by the danger of unfair prejudice. Based on some confusion about the timeline of events, the District Court initially issued an order granting Pulst's motion. The order was reversed and the

4

motion denied once the parties resolved certain factual misunderstandings.  Doing so, the

District Court stated that:

> The State's position, as I understand it, is that they are not intending to present any information for the purpose of having the jury convict on the basis of that alleged [Washington Assault], but rather to allow the State to explain the chain of events set in motion by the allegations that arose from December of 1999. Now, I do find that the State should be allowed, as part of the presentation of this case, to make reference to that incident and the allegations that arose from that, but that that should not include any unnecessary details regarding inappropriate contact or touching, penetration. I don't see any purpose in discussing that. . . . So having said that, I'm going to allow the State to do that then. And we may need to address this, just a general presentation, that Mr. Pulst engaged in some conduct similar to what she had experienced in the past, that this happened in her home where she perhaps felt safer to make a disclosure or sort of outrage where she felt that she had to -- I don't know what she felt she had to do. . . . I will allow that for that limited purpose because I do think that the State should be allowed an opportunity to explain the particular events that led to further investigation and/or statements made by Mr. Pulst.

¶12 The District Court conducted a jury trial that began on January 7, 2013.  A.B., K.S., J.B., and W.D. were among the witnesses the State called to testify.  As part of their testimony, A.B. and J.B. described the events that occurred in Washington and how they led to A.B. relating her allegations of sexual assault to J.B.  As part of K.S.'s testimony, she described the effects that the sexual assault has had on her life.  She related that:

> It's, you know -- it's really, really hard on me. I used to have, you know, horrible nightmares about it. Thought things w[ere] getting better, but then last -- I mean it's not been a long time. It's 12 years ago that I turned it in. I still can't be like alone in a room with a male, that even if I know them, it's like really -- I'll like have panic attacks. That's ruining, you know, potential jobs for me. If I might interview with a male, I can't even -- I can't handle it. It's really hard on me. Like the relationship with my husband, if he touches me the wrong way, it triggers something, you know.

In response, Pulst asked whether K.S. had ever been abused by her husband.  After K.S.

responded "no," Pulst attempted to introduce evidence that W.D., K.S.'s mother, had

5

noticed and taken pictures of extensive bruising on K.S. at some point after K.S. was married. Pulst theorized that some kind of domestic abuse was an alternate explanation for K.S.'s traumatization and that evidence of abuse was relevant to K.S.'s credibility. The State objected to introduction of this evidence, and the District Court sustained the objection.

¶13 Following the trial, a jury found Pulst guilty of all the charges brought against him. The District Court held a sentencing hearing on May 24, 2013. It pronounced its sentence orally following the hearing. It committed Pulst to Montana State Prison for several terms of years, and it suspended portions of the terms, subject to Pulst's compliance with various conditions that it imposed. The District Court primarily adopted the conditions recommended in Pulst's pre-sentence investigation report, though the District Court modified some of the conditions. The District Court entered a written sentence on June 12, 2013.

## STANDARDS OF REVIEW

¶14 We review a criminal sentence longer than one year for legality. *State v. Greene*, 2015 MT 1, ¶ 13, 378 Mont. 1, 340 P.3d 551. We generally review a district court's rulings on the admissibility of evidence for abuse of discretion. *State v. Berosik*, 2009 MT 260, ¶ 28, 352 Mont. 16, 214 P.3d 776. But, where the district court's reasons for its evidentiary rulings are not apparent from the record, we will review the rulings de novo. *State v. Clifford*, 2005 MT 219, ¶ 52, 328 Mont. 300, 121 P.3d 489.

¶15 Pulst argues that we should review the District Court's evidentiary rulings de novo in this case. However, the District Court's reasons for the evidentiary rulings at issue on

appeal are apparent from the record. The District Court thoroughly considered on the record the parties' arguments for and against admission of the evidence, and it carefully explained its reasons for the rulings. We review the rulings for an abuse of discretion. *Clifford*, ¶ 52.

**DISCUSSION**

¶16    *1. Did the District Court abuse its discretion by admitting evidence of uncharged acts of sexual assault allegedly committed by Pulst?*

¶17    Pulst argues that the District Court abused its discretion when it decided to admit evidence of the Washington Assault. Although both parties agree on appeal that the evidence was relevant pursuant to the transaction rule of § 26-1-103, MCA, Pulst argues that the probative value of the evidence was substantially outweighed by danger of unfair prejudice and that the evidence should have been excluded pursuant to M. R. Evid. 403. We disagree.

¶18    Relevant evidence is admissible unless a rule of evidence precludes its admission. M. R. Evid. 402; *State v. Stewart*, 2012 MT 317, ¶ 58, 367 Mont. 503, 291 P.3d 1187. M. R. Evid. 403 allows a district court, as an exercise of its discretion, to exclude relevant evidence where the evidence's "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." This rule does not require exclusion of relevant evidence simply because it is prejudicial. Indeed, most evidence offered by the prosecution in a criminal trial will be prejudicial to the defendant. *Stewart*, ¶ 68; *State v. Bieber*, 2007 MT 262, ¶ 59, 339 Mont. 309, 170 P.3d 444. Instead, evidence is excludable by M. R. Evid. 403 only if the danger of prejudice from the

7

evidence is unfair and substantially outweighs the evidence's probative value. M. R. Evid. 403; *Stewart*, ¶ 68.

¶19 Evidence is unfairly prejudicial if it tempts the jury to decide the case on an improper basis. *State v. Franks*, 2014 MT 273, ¶ 15, 376 Mont. 431, 335 P.3d 725. Unfair prejudice may arise from evidence that arouses the jury's hostility or sympathy for one side. *Franks*, ¶ 16. Evidence of crimes, wrongs, or acts of the defendant that are not directly at issue in a case are especially likely to create unfair prejudice. *See Franks*, ¶¶ 14-16. This is particularly true for evidence of child molestation, given its "highly inflammatory" nature, and we have advised district courts and parties to "tread with caution" when introducing such evidence. *Franks*, ¶ 17. A district court may minimize unfair prejudice by admitting evidence for a particular purpose and limiting the uses to which the jury may put the evidence. *See* M. R. Evid. 105; *State v. Hantz*, 2013 MT 311, ¶ 44, 372 Mont. 281, 311 P.3d 800; *McDermott v. Carie*, 2005 MT 293, ¶¶ 20-23, 329 Mont. 295, 124 P.3d 168.

¶20 In this case, the District Court carefully controlled the admission of evidence of the Washington Assault, limiting the danger of unfair prejudice. It ruled that the evidence was admissible only for the limited purpose of explaining the timing of A.B.'s disclosure, and it limited discussion of the assault to the bare facts of its occurrence and the surrounding circumstances. During trial, it was vigilant in enforcing this ruling, and it ensured that the parties respected the limitations it imposed on the evidence. It also gave instructions to the jury on at least three separate occasions reminding it of the limited use to which the evidence could be put. Ultimately, A.B. and J.B. testified that

Pulst had touched A.B. inappropriately during Pulst's visit to Washington and that this led to A.B.'s disclosure of the instances of sexual assault that were at issue in the case. There was no description of Pulst's actions other than statements that he had touched A.B. inappropriately by repeating things he had previously done during drives in Montana. Given the court's careful treatment of the evidence, there was little temptation or opportunity for the jury to decide the case on an improper basis.

¶21 District courts have broad discretion to admit or exclude evidence under M. R. Evid. 403. *State v. Passmore*, 2010 MT 34, ¶ 64, 355 Mont. 187, 225 P.3d 1229. In light of the District Court's treatment of the evidence that limited its prejudicial effects, we see no reason to disturb its discretionary decision to admit evidence of the Washington Assault. The District Court, by carefully limiting the evidence that was admitted and controlling the manner in which it was introduced, ensured that any unfair prejudice did not substantially outweigh the probative value of the evidence.

¶22 *2. Did the District Court abuse its discretion by excluding evidence that K.S. was physically abused by her husband several years after the sexual assaults?*

¶23 At trial, Pulst sought testimony from W.D. that she had seen and taken pictures of bruises on K.S. years after Pulst's sexual assaults. He claimed that the evidence would impeach K.S.'s testimony by contradicting her cross-examination statement that she was not physically abused by her husband and by providing an alternate explanation for the effects K.S. claimed to have suffered as a result of Pulst's assaults. The District Court decided that the evidence was not relevant and refused to admit it. Pulst argues that this was an abuse of discretion. We disagree.

9

¶24 Evidence is relevant if it tends to make "any fact that is of consequence to the determination of the action" more or less probable. M. R. Evid. 401. This may include "evidence bearing upon the credibility of a witness." M. R. Evid. 401. Evidence that is not relevant is not admissible. M. R. Evid. 402.

¶25 The evidence that Pulst seeks to admit is not, as Pulst contends, evidence that K.S. was abused by her husband. At most, this is a remote inference that might possibly be drawn from the evidence. More accurately, Pulst sought to introduce evidence that W.D. observed and took pictures of bruises on K.S. several years after the alleged sexual assaults. He also sought W.D.'s testimony that she believed the bruises might be attributable to abuse by K.S.'s husband.

¶26 This evidence—evidence of bruising on K.S. and W.D.'s mere speculation as to its cause—is not relevant evidence. It does not tend to make any fact "of consequence to the determination of the action" more or less probable. The fact that K.S. may have experienced extensive bruising years after Pulst sexually assaulted her does not tend to show that K.S.'s husband or anyone else abused her. Moreover, even if we assume otherwise, such abuse would not be a fact "of consequence to the determination of the action," as abuse years after the alleged sexual assaults would not tend to show that Pulst was innocent of the crimes with which he was charged. Even if the evidence suggested that K.S. lied about whether her husband had abused her, this would not establish the inference that she had lied to her parents, police, and the court when she reported that Pulst had sexually assaulted her. Finally, the evidence does not show that K.S. misattributed the cause of her emotional injuries to Pulst's sexual assault, and even if it

10

did, the cause of her continuing injuries is not a fact "of consequence to the determination of the action."

¶27 District courts have broad discretion to decide whether evidence is relevant. *Henricksen v. State*, 2004 MT 20, ¶ 64, 319 Mont. 307, 84 P.3d 38. As Pulst has not demonstrated on appeal that this evidence tends to make any fact "of consequence to the determination of the action" more or less probable, we will not disturb the District Court's discretionary decision that the evidence was not relevant and should be excluded.

¶28 *3. Did the District Court err by imposing a written sentence that was inconsistent with the sentence it orally pronounced?*

¶29 Pulst argues that the District Court's written sentence is inconsistent with its oral pronouncement. Specifically, he argues that conditions 4, 7, 16, and 25 of the written judgment differ from those pronounced at the sentencing hearing. The State concedes that written conditions 4 and 7 deviate from the conditions orally pronounced and should be corrected. It does not agree, however, that written conditions 16 or 25 were inconsistent with the conditions orally pronounced.

¶30 As written, condition 16 reads: "If deemed appropriate by the Probation & Parole Officer, Defendant shall obtain a chemical dependency evaluation by a state-approved evaluator. Defendant shall pay for the evaluation and follow all of the evaluator's treatment recommendations." This is consistent with the condition as pronounced at the sentencing hearing. The District Court stated that:

> I'm going to include provisions of Paragraph 16. The recommendation made in Paragraph 16 does not require you to obtain such a chemical dependency evaluation, but that requirement would only be made if a State hearings officer deems it appropriate. Let's all hope . . . you never get to

11

that stage. This would be as a result of some infraction or rule violation, and they would have the opportunity to determine if such an evaluation is appropriate at that time.

In its oral pronouncement, the District Court described the condition as it was written. It expressed no intention to modify the condition. We agree with the State that the District Court's written condition 16 is consistent with the condition as orally pronounced.

¶31 However, we agree with Pulst that condition 25 as written is inconsistent with the condition as orally pronounced. As written, condition 25 reads: "Defendant *shall* attend self-help meetings at the direction of the Probation & Parole Officer to assist with Defendant's rehabilitation." (Emphasis added.) When the District Court orally pronounced the condition, the District Court transcript included:

> THE COURT: . . . I'm going to include the provision of Paragraph [2]5. The probation officer *may* direct you to attend self-help meetings if deemed appropriate and necessary and designed to assist you with your rehabilitation.
> *That's a modification* there, all right. Do you want that language in there?
> [THE STATE]: Yes, Your Honor. . . . I'm sorry, on 25, if deemed appropriate by the probation/parole officer?
> THE COURT: By the probation/parole officer, if deemed appropriate and designed to assist Mr. Pulst's rehabilitation.

(Emphasis added.) Despite the State's contention otherwise, the District Court modified condition 25 in its oral pronouncement. It explicitly declared that it made a modification, and it expressed the intention to alter the mandatory language of the written condition so that it was instead permissive and based on the probation/parole officer's judgment of the appropriateness of the condition. Condition 25, as written, is inconsistent with the oral pronouncement of the condition.

12

¶32 The "oral pronouncement of a criminal sentence in the presence of the defendant is the legally effective sentence and valid, final judgment." *Greene*, ¶ 29 (internal quotation marks omitted). Where a written judgment increases the sentence, it should be reversed. The State concedes that conditions 4 and 7 were unlawfully increased in the written judgment, and it is clear upon reviewing the record that condition 25 was also unlawfully increased in the written judgment. Consequently, we reverse the judgment and remand for the purpose of correcting conditions 4, 7, and 25 of the District Court's written judgment.

## CONCLUSION

¶33 The District Court did not abuse its discretion when it allowed limited evidence of an uncharged act by Pulst to be introduced. It also did not abuse its discretion when it decided that evidence of possible physical abuse of K.S. by her husband was not relevant and consequently inadmissible. However, the District Court did err when it issued a written sentence that was partially inconsistent with the sentence it had orally pronounced. We affirm in part, reverse in part, and remand for the purpose of correcting the written judgment.

/S/ MICHAEL E WHEAT

We concur:

/S/ PATRICIA COTTER
/S/ BETH BAKER
/S/ LAURIE McKINNON
/S/ JIM RICE

13