Justice Ingrid Gustafson, dissenting.
 

 ¶ 40 I respectfully dissent on Issue One. Although the majority acknowledges that § 46-13-101(3), MCA, allows a district court to grant relief from waiver, and relief from waiver requires a showing of good cause, Opinion, ¶ 20, the District Court in fact overlooked the need to apply § 46-13-101(3), MCA, when it joined the first and second cases upon the State's motion. Because the District Court did not apply § 46-13-101(3), MCA, and did not find good cause to grant the State relief from its waiver of joinder in this matter, its decision to join the two cases lacks statutory support, and we should reverse and remand this matter for the District Court to make such a determination.
 

 ¶ 41 The facts and circumstances which occurred after the jury failed to return a verdict on June 3, 2014, illuminates why the District Court failed to apply § 46-13-101(3), MCA. Immediately after the court dismissed the jury in the first trial, the State's counsel moved to join the two cases, citing § 46-11-404, MCA, and § 46-13-210, MCA, in support of its position. As Ankeny explains:
 

 Having waived joinder and consolidation, the State was required
 to show good cause for relief from its waiver.
 § 46-13-101(3), MCA. The State's argument to the district court ... did not mention good cause. ... Therefore, the State has not, and cannot show that it met its burden to show good cause for relief from its waiver of joinder and consolidation in both cases.
 

 Since it did not request joinder at the time of the omnibus hearing, the State waived its opportunity to avail itself of these provisions. In order to relieve the State from its waiver-and thus consider whether the cases should be joined under § 46-11-404, MCA, and § 46-13-210, MCA -the District Court first needed to find good cause under § 46-13-101(3), MCA.
 

 ¶ 42 As Ankeny argues in his Opening Brief, "Having abandoned joinder and consolidation in both 13-249 and 13-250, the State was required to show good cause for relief from its waivers.
 
 See
 
 § 46-13-101(3), MCA." However, as Ankeny further explains, the State did not show good cause, and the State did not raise § 46-13-101(3), MCA, when it moved to join the cases. Rather, the State argued the cases could have been joined initially-a position which Ankeny correctly characterizes as "beside the point." The State also did not raise § 46-13-101(3), MCA, at the June 5, 2014 hearing on consolidation. Nor did the District Court cite § 46-13-101(3), MCA, or refer to "good cause" in its Order Granting Motion to Consolidate for Trial. Thus, as Ankeny points out, "[t]he district court did not find good cause to grant the State relief from its pretrial waivers of joinder and consolidation." Rather, the District Court determined the cases "could have been joined in a single information pursuant to
 
 Mont. Code Ann. § 46-11-404
 
 ," and "[c]onsolidation of the two cases for trial is in the interests of justice, as contemplated by
 
 Mont. Code Ann. § 46-13-210
 
 ." Nothing in the record suggests the District Court was aware of the need to find good cause to relieve the State of its waiver under § 46-13-101(3), MCA. Although the majority contends that Ankeny's argument fails because he did not raise § 46-13-101(3), MCA, in the court below, the State had the burden of proof. Ankeny had no obligation to make the State's case for it.
 

 ¶ 43 Although the State argues these two cases could have been joined in the first place, this is not the point: the mere fact the cases could have been joined at the outset does not provide good cause for relief from the waiver of joinder. Here, the majority improperly relies on
 
 Southern
 
 and similar cases, putting the burden on Ankeny to prove prejudice when the burden should be on the State to prove good cause. In
 
 Southern
 
 , we held when a defendant seeks severance, it is his burden to prove severance is necessary to prevent unfair prejudice.
 

 Southern
 
 , ¶ 14 (citation omitted). We have held a criminal defendant moving for severance bears the burden of proving joinder is prejudicial.
 
 State v. Martin
 
 ,
 
 279 Mont. 185
 
 , 192,
 
 926 P.2d 1380
 
 , 1384 (1996) (citation omitted). However, where the State is moving for relief of its waiver of joinder, and the defendant is not moving to sever causes, it is not the defendant's burden to prove prejudice under the factors recited in
 
 Southern
 
 . Here, unlike
 
 Southern
 
 and
 
 Martin
 
 , Ankeny has not moved for severance; the State has moved for relief from its waiver of joinder. Therefore, the burden is on the State to prove good cause-and we cannot presume good cause exists where the State did not present the argument in the court below.
 

 ¶ 44 Since the District Court did not apply § 46-13-101(3), MCA, in relieving the State of its waiver, this is an error of law, which we review de novo.
 
 State v. Davis
 
 ,
 
 2016 MT 102
 
 , ¶ 30,
 
 383 Mont. 281
 
 ,
 
 371 P.3d 979
 
 ("[A]ll issues involving interpretation and application of the law are decided by the appellate court on the basis of the law, without according deference to the trial court.") (citation omitted).
 

 ¶ 45 I would reverse the District Court since it erred in joining these cases for trial, after the State had waived the opportunity to do so, without applying the good cause standard of § 46-13-101(3), MCA.
 

 ¶ 46 I also dissent on Issue Two. I would hold the District Court abused its discretion by admitting the letters Ankeny wrote to Vonnie from jail, as the prejudicial contents of the letters outweighed their probative value pursuant to M. R. Evid. 403.
 

 ¶ 47 Unfair prejudice may arise from evidence that arouses the jury's hostility or sympathy for one side, confuses or misleads the trier of fact, or unduly distracts the jury from the main issues.
 
 State v. Franks
 
 ,
 
 2014 MT 273
 
 , ¶ 16,
 
 376 Mont. 431
 
 ,
 
 335 P.3d 725
 
 (citation omitted). Here, the letters did all three, portraying Ankeny as a person with a criminal past, present, and future-someone who had served time in prison, was currently on parole, was facing charges unrelated to this case, and was expecting to return to prison for parole violations.
 

 ¶ 48 The State told the District Court it intended to offer the letters both as substantial proofs of admission and to prove Ankeny attempted to influence Vonnie's behavior, "which does feed into the domestic violence cycle." The State suggested Ankeny's expressions of controlling behavior and of love for Vonnie would help the jury understand Vonnie's delayed disclosure.
 

 ¶ 49 Ankeny argues he "made numerous proposals to allow the State to introduce the probative evidence it wanted, and for its stated purpose, without introducing the unredacted letters...." Ankeny's proposals included: redacting the letters; Vonnie reading the relevant
 portions of the letters into the record; Ankeny stipulating the car was recovered in his possession in Missoula; and the parties removing a dated label from one piece of evidence, which is how the jurors deduced Vonnie's delay in disclosing the April 2012 assault. However, the State objected to every proposal. Instead, the State desired, and the District Court agreed, to have the letters admitted into evidence and submitted to the jury unredacted.
 

 ¶ 50 The State submitted five letters into evidence, each between two and four pages in length. The letters make it clear that: Ankeny is writing from jail; he has several additional charges pending against him, including DUI and criminal endangerment; he was previously in prison for another crime or crimes; he was on parole prior to being arrested; he knowingly violated the terms of his parole; and he expects to be sent back to prison for his parole violation. While the majority characterizes Ankeny's references to prior bad actions as "minimal" and "vaguely stated," they are specific enough to inform the jury he has a criminal history: "[L]ast time I got convicted for doing nothing!" "As for my violation, there is no DUI so I could be let right back out when I am done with this." "My public defender just got me down & really scared because he is not a very good one and if I keep him, I fear another prison term."
 

 ¶ 51 The details of Ankeny's encounters with the criminal justice system are intermixed with professions of love and longing and vague apologies to Vonnie, such as "I am sorry for all the wrong I have done," "I take the blame for all our problems," and "Will you forgive me honey and move forward with me?" The letters also contain statements the jury could interpret as supporting Vonnie's testimony, such as: "I can[']t be getting all drunk and putting you thru hell, it is not fair to do that to the person you love. They always say we hurt the ones closest to us the worse." And, "I am trying to make things better with us and assure you that once we make it past this, it will never happen again." Ankeny argued these statements could just as easily refer to the trouble he was in for the parole violation and other pending charges. This is true. However, it was within the District Court's discretion to admit these statements and let the jury decide how to interpret them. I disagree it was within the court's discretion to admit the full text of five letters in order to put these few sentences before the jury.
 

 ¶ 52 The letters also contain statements which can be read as Ankeny encouraging Vonnie to assist him in evading the charges from the April 25 and May 2 incidents-statements such as: "I hope that you took care of the mess over there. I don't need anymore charges and I couldn't get out of that without ... you helping for sure," and, "I am
 praying that you took care of the thing over there. I have no charges so that's a good sign." I agree these statements were probative as well, but maintain their admission did not require the admission of the letters in their entirety.
 

 ¶ 53 The letters also contain admissions Ankeny was driving Vonnie's car, such as, "I am sorry about the break [sic] line in the car
 but I assure you I didn't do that. I stopped the car and it was fine." However, Ankeny offered to stipulate Vonnie's car was recovered in Missoula County with Ankeny driving it, and thus the State did not need to introduce the letters to prove Ankeny had control of the vehicle.
 

 ¶ 54 The majority holds the letters were relevant to explain why Vonnie delayed disclosing the April 2012 assault. However, as both parties acknowledge, the first jury only discovered Vonnie had delayed disclosing the April 2012 assault because of the date on an evidence sticker. Given the State's desire to keep the delay from the jury in the first trial, it is unclear why removal of that sticker was not the preferable solution for the second trial.
 

 ¶ 55 Although some statements in the letters have some probative value, the prejudicial nature of the remaining content cannot be denied, and this prejudicial content should not have been presented to the jury. Either redacting the letters or having a witness read the probative excerpts to the jury would have satisfied the State's need to present this evidence while also protecting Ankeny's right not to have the jury decide the case on an improper basis.
 
 See
 

 Stewart
 
 , ¶ 68.
 

 ¶ 56 Although the District Court offered a cautionary instruction to the jury, it was insufficient to overcome the prejudicial effect of the unredacted letters. Furthermore, I would not find the admission of these letters was harmless error. Section 46-20-701, MCA ;
 
 State v. Van Kirk
 
 ,
 
 2001 MT 184
 
 , ¶ 44,
 
 306 Mont. 215
 
 ,
 
 32 P.3d 735
 
 (to prove trial error was harmless, the State must demonstrate no reasonable possibility the inadmissible evidence might have contributed to conviction).
 

 ¶ 57 For these reasons, I would conclude the District Court erred in admitting Ankeny's letters and providing them unredacted to the jury. I would therefore reverse and remand this matter to the District Court.
 

 Justice Shea and Justice McKinnon join in the dissenting Opinion of Justice Gustafson.