No. 99-308

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 323

---

THE STATE OF MONTANA,

Plaintiff and Respondent,

v.

ROBERT JAMES CLEMO,

Defendant and Appellant.

---

APPEAL FROM: District Court of the First Judicial District,

In and for the County of Lewis and Clark,

The Honorable Dorothy McCarter, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Lucas J. Foust, Public Defender's Office; Helena, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General; Pamela P. Collins,

Assistant Attorney General; Helena, Montana

Mike McGrath, Lewis and Clark County Attorney; Mike Menahan,

Deputy County Attorney, Helena, Montana

---

Submitted on Briefs: October 14, 1999

Decided: December 22, 1999

Filed:

---

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

1. ¶ By Information filed in the District Court for the First Judicial District in Lewis and Clark County, the Defendant, Robert Clemo, was charged with robbery, a felony in violation of § 45-5-401, MCA. Clemo pled guilty to the offense charged. The District Court sentenced Clemo to prison for robbery and enhanced his sentence by two years pursuant to § 46-18-221, MCA, for use of a dangerous weapon. Clemo appeals the enhancement of his sentence. We vacate that part of Clemo's sentence imposed pursuant to § 46-18-221, MCA.

2. ¶ The following issue is presented for review:

3. ¶ Did the District Court err when it concluded that Clemo used a dangerous weapon during the commission of his offense?

## FACTUAL BACKGROUND

4. ¶ On January 3, 1999, Clemo robbed a casino in Helena, Montana by threatening an employee with an unloaded Crossman BB pistol. After waiving his Miranda rights,

Clemo provided the following statement to police:

I asked my Mom to give me a ride to Hardee's. When we got there, I got out to go to Hardee's. My Mom said she was going to go to the Nickel Ante to play some dollars. I said okay and she left. I left my door unlocked and left to do the job. I went in, walked up to the man and asked him if he had change for a Hundred. He said yes. I then pulled out a bb Gun and told him to give me all his money, he did and I left. I went to Hardee's where I bought a cup of Coffee. I turned around and a cop arrested me and took me away. The man identified me and I was arrested.

The State charged Clemo with robbery, a felony in violation of § 45-5-401(1)(b), MCA. Clemo pled guilty and the District Court sentenced him to the Montana State Prison for seven years with five years suspended. The District Court also ordered Clemo to serve an additional two years in prison, consecutive to the underlying sentence, for committing an offense with a dangerous weapon pursuant to § 46-18-221, MCA.

## STANDARD OF REVIEW

5. ¶ When we review a district court's conclusions of law, the standard of review is whether those conclusions are correct. *State v. Wilson* (1997), 282 Mont. 134, 136, 936 P.2d 316, 317.

## ISSUE

6. ¶ Did the District Court err when it concluded that Clemo used a dangerous weapon during the commission of his offense?

7. ¶ Section 46-18-221(1), MCA provides:

A person who has been found guilty of any offense and who, while engaged in the commission of the offense, knowingly displayed, brandished, or otherwise used a firearm, destructive device, as defined in 45_8_332(1), or other *dangerous weapon* shall, in addition to the punishment provided for the commission of such offense, be sentenced to a term of imprisonment in the state prison of not less than 2 years or more than 10 years, except as provided in 46_18_222.

(Emphasis added.)

8. ¶ Clemo contends that the BB gun he used was not a "dangerous weapon" because it was unloaded and could not have been used to injure someone.

9. ¶ For the purposes of § 46-18-221(1), MCA, the definition of a "dangerous weapon" is based on an objective analysis of the weapon itself, not on the subjective belief of the victim. In *State v. Wilson* (1997), 282 Mont. 134, 137, 936 P.2d 316, 318, we stated:

We conclude . . . that § 46_18_221, MCA, is not intended to prevent fear of danger. The purpose of § 46_18_221, MCA, is to prevent actual danger, and to deter criminals from using dangerous weapons during the commission of crimes. We conclude that § 46_18_221, MCA, must be analyzed pursuant to an objective test, and that district courts should analyze the weapon itself, not the subjective beliefs and fears of the victim, to determine whether a "dangerous weapon" was used during the commission of an offense.

10. ¶ The State contends that this case is distinguishable from *Wilson* because the BB gun in Wilson was "broken, unloaded, and inoperable," and the BB gun here was simply unloaded. The State relies on *In re R.L.S.*, 1999 MT 34, 56 St.Rep. 149, 977 P.2d 967 and *State v. Matson* (1987), 227 Mont. 36, 736 P.2d 971, both of which discuss the meaning of the term "weapon" as defined in § 45-2-101(76), MCA (1997), which provides:

"Weapon" means any instrument, article, or substance that, regardless of its primary function, is *readily capable* of being used to produce death or serious bodily injury.

(Emphasis added.) According to the State, an unloaded but operable BB gun, is readily capable of inflicting serious bodily injury if it is loaded, whereas, an inoperable BB gun, like the one used in *Wilson*, can never be made operable. However, while the BB gun in *Wilson* may be distinguishable from the BB gun used by Clemo, the potential for harm presented is indistinguishable. Therefore, we conclude that *Wilson* controls our decision in this case.

11. ¶ In *R.L.S.*, we stated that a device which only "appears to be" a bomb is not "readily capable" of producing death or serous bodily injury, and, therefore, is not a

"weapon" as defined in § 45-2-101(76), MCA (1997). We defined the phrase "readily capable" as synonymous with the phrase "easily able," we stated:

The plain meaning of the word "readily" is "easily." The American Heritage Dictionary 1504 (3rd ed.1992). "Capable" is defined as "[h]aving capacity or ability . . . able . . . [h]aving the ability required for a specific task . . . ." The American Heritage Dictionary 283 (3rd ed.1992). Thus, a device is a weapon under the plain meaning of § 45_2_101(76), MCA, if it is easily able to produce death or serious bodily injury.

*R.L.S.*, ¶ 9.

12. ¶ In *Matson*, we held "[a] pellet pistol does not escape the purview of 'weapon,' because a high velocity pellet in the eye is certainly capable of inflicting 'serious bodily injury.'" *Matson*, 227 Mont. at 40-41, 736 P.2d at 974. However, there was no suggestion that the pellet pistol in *Matson* was unloaded.

13. ¶ Unlike the pellet pistol in *Matson*, Clemo's unloaded BB gun was incapable of projecting a high velocity projectile of any type. Further, Clemo's BB gun was not a weapon as defined in *R.L.S.* Clemo's unloaded BB gun was not "easily able" to produce serious bodily injury at the time it was used to rob the casino. Therefore, we conclude that Clemo's unloaded BB gun was not a weapon as defined in § 45-2-101 (76), MCA (1997), because it was no more capable of causing harm at the time in question than the gun used in *Wilson*.

14. ¶ For these reasons, we conclude that the District Court erred when it concluded that Clemo used a dangerous weapon during the commission of his offense, and we reverse the District Court's enhancement of Clemo's sentence pursuant to § 46_18_221, MCA, and remand to the District Court with directions to vacate the enhanced portion of his sentence.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ J. A. TURNAGE

/S/ W. WILLIAM LEAPHART

/S/ WILLIAM E. HUNT, SR.

Justice Karla M. Gray, dissenting.

¶ I respectfully dissent from the Court's opinion.

¶ In my view, *Wilson* is distinguishable from the present case and, therefore, not controlling. There, we correctly concluded that a "broken, unloaded, and inoperable" BB gun was incapable of being used to produce death or serious bodily injury. *Wilson*, 282 Mont. at 137, 936 P.2d at 318. We did not require that the gun be immediately capable of being used to produce such a result--that is, capable of producing death or serious bodily injury at the precise second it was used in the commission of a crime. Indeed, we could not properly have done so since "weapon" is statutorily defined in § 45-2-101, MCA, as an instrument "readily capable"--not "immediately capable"--of being used to produce death or serious bodily injury.

¶ Here, unlike the broken and inoperable instrument in *Wilson*, the BB gun used by Clemo was readily capable of being used--that is, "easily able" to be used--to produce death or serious bodily injury under the definition of "readily capable" we applied in *R.L.S.* All that was necessary was to load the gun, potentially with ammunition in the perpetrator's pocket, in no more than a moment's time. For the same reason, the Court's statement to the contrary notwithstanding, the potential for harm presented by Clemo's unloaded BB gun is readily distinguishable from the lack of potential for harm presented by the broken and inoperable BB gun in *Wilson*. Finally, Clemo's BB gun, unloaded but not inoperable, was not incapable of projecting a high velocity projectile of any type, as the Court opines. It was capable of doing so and, indeed, "readily capable" of doing so to produce death or serious bodily injury. The statute requires no more.

¶ I would affirm the District Court's enhancement of Clemo's sentence for using a dangerous weapon. I dissent from the Court's failure to do so.

/S/ KARLA M. GRAY

No