No. 03-128

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 254

STATE OF MONTANA,

        Plaintiff and Respondent,

   v.

R.B. "J" C., A Youth Under the Age of 18,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Twenty-First Judicial District,
In and for the County of Ravalli, Cause No. DJ 2001-56
The Honorable Jeffrey H. Langton, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

        Larry D. Mansch, Mansch & McLaverty, PLLP, Hamilton, Montana

      For Respondent:

        Honorable Mike McGrath, Montana Attorney General, Micheal S. Wellenstein, Assistant Attorney General, Helena, Montana; George Corn, Ravalli County Attorney, Karen Mahar, Deputy County Attorney, Hamilton, Montana

Submitted on Briefs:  September 25, 2003

Decided:  September 14, 2004

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1      R.B. "J" C. (hereinafter "J"), a youth, was charged with two counts of felony Assault with a Weapon.  He filed a Motion to Dismiss Petition on the ground that the facts alleged against him do not, as a matter of law, support the two counts.  The District Court denied his Motion.  "J" appeals.  We affirm.

## ISSUE

¶2      A restatement of the issue before this Court is whether the District Court erred when it concluded that a cigarette lighter was a "weapon" capable of producing "serious bodily injury" and thereafter denying "J's" Motion to Dismiss on this ground.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3      The facts in this case are undisputed.  On August 11, 2001, when "J" was sixteen years old, his mother asked him to babysit for his five-year old half-sister (hereinafter "M"), and his two half-brothers, ages four and two.  Over the course of the evening, "J" repeatedly burned "M" with the heated metal tip of a cigarette lighter.  After inflicting at least six burns to her shoulder, arm, the inside of her thigh, and the bottom of one of her feet, he instructed her to put aloe on the injuries and to tell no one what he had done.  When their mother returned home and noticed the multiple bandaids "M" was wearing, "M" told her she had fallen while riding her bicycle.

¶4      A few days later, the mother took the young children swimming and discovered the burns beneath "M's" bandaids.  At that time, "M" told her what "J" had done. The four-year old child corroborated the story and said he was afraid that "J" was going to burn him and

2

the younger child that evening as well.

¶5 On August 17, 2001, approximately one week after the burns were inflicted, "M's" mother reported the incident to "M's" day care provider, who in turn notified the authorities. On August 20, "M" was examined by a pediatric physician who diagnosed her with several second degree burns that potentially could cause permanent scarring. On August 21, "J" was taken into custody. He underwent a psychological evaluation, and on April 19, 2002, the State charged him with two counts of Assault with a Weapon. One count was for causing "M" to be in reasonable apprehension of serious bodily injury; the other was for causing his four-year brother the same fear and apprehension.

¶6 On June 26, 2002, "J" filed a Motion to Dismiss on the ground that the facts alleged against him did not, as a matter of law, support the two counts of assault. The State filed its Response on July 25, and on August 29, 2002, the District Court issued its Opinion and Order denying "J's" Motion. "J" filed a timely notice of appeal.

## STANDARD OF REVIEW

¶7 As indicated above, the issue before us on appeal is whether the District Court erred in denying "J's" Motion to Dismiss after concluding that a cigarette lighter was a "weapon" capable of producing "serious bodily injury." The District Court's determination that the lighter satisfied the statutory definition of "weapon" is a conclusion of law which we review for correctness. Moreover, a district court's denial of a motion to dismiss criminal charges is also a matter of law which we review *de novo*, determining only whether the court

correctly interpreted the law. *State v. Smith*, 2004 MT 191, ¶ 12, 322 Mont. 206, ¶ 12, 95 P.3d 137, ¶ 12.

## DISCUSSION

¶8     "J" argues that the "unlit" lighter he used to burn "M" does not meet the statutory definition of a "weapon" that is set forth in § 45-2-101(78), MCA. He further argues that because the "unlit" lighter was not a weapon, he was erroneously charged with "Assault with a Weapon" under § 45-5-213, MCA, and the District Court erred in denying his Motion to Dismiss.

¶9     Section 45-2-101(78), MCA, defines "weapon" as "an instrument, article, or substance that, regardless of its primary function, is readily capable of being used to produce death or serious bodily injury." Section 45-5-213(1), MCA, states that "[a] person commits the offense of assault with a weapon if the person purposely or knowingly causes: (a) bodily injury to another with a weapon; or (b) reasonable apprehension of serious bodily injury in another by use of a weapon or what reasonably appears to be a weapon." "Serious bodily injury" is defined as a bodily injury that "creates a substantial risk of death; causes serious permanent disfigurement or protracted loss or impairment of the function or process of a bodily member or organ; or at the time of injury, can reasonably be expected to result in serious permanent disfigurement or protracted loss or impairment of the function or process of a bodily member or organ." Section 45-2-101(65), MCA.

¶10 "J's" argument is predicated upon the fact that the lighter was unlit when he burned "M," and that an "unlit" lighter is not readily capable of producing death or serious bodily injury; therefore he cannot, by law, be guilty of assault with a weapon.

¶11 The State counters that the lighter is "an instrument" that is "readily capable of being used to produce death or serious bodily injury;" therefore it is a weapon under § 45-2-101(78), MCA. The State concedes that had the lighter been defective or been out of fuel and therefore incapable of being ignited, this may have precluded the lighter from being a "weapon" under *State v. Wilson* (1997), 282 Mont. 134, 936 P.2d 316 (a broken, unloaded, and inoperable BB gun was not a weapon under Montana law), or *State v. Clemo*, 1999 MT 323, 297 Mont. 316, 992 P.2d 1263 (an unloaded BB gun was not a weapon). However, such was not the case. The lighter used by "J" contained sufficient fuel to ignite numerous times in order to get the tip hot enough to burn "M."

¶12 The District Court concluded that the cigarette lighter was a weapon because "[e]ven though the flame was extinguished before the lighter was held against ["M's"] body, the lighter was readily capable of being used to produce serious bodily injury, had ["J"] relit it next to ["M's"] clothing, hair, or body." The District Court continued that the Montana Supreme Court has defined "weapon" broadly and "has upheld the determination that items are weapons under the statutory definition even when serious bodily injury has not resulted from their use; the potential to cause serious bodily injury is sufficient."

¶13 While the lighter "J" used to burn "M" was unlit when he pressed it to her flesh, it had been lit immediately prior in order to heat the metal tip to a temperature that would

5

inflict pain and burn "M." Despite her cries and pleas to stop, "J" burned "M" this way at least six times. His two younger brothers witnessed the assaults and were afraid that they, too, would be assaulted. There is no doubt that at the time "J" was using the "unlit" lighter in this fashion, it was a weapon in the generic sense or as defined by the Merriam-Webster Online Dictionary (*i.e.*, "something used to injure"). We need now determine whether the District Court correctly concluded that it met the statutory definition of "weapon."

¶14 "J" relies on *In Re R.L.S.*, 1999 MT 34, 293 Mont. 288, 977 P.2d 967, in which we concluded that a package intended to look like a bomb but which had no explosive or dangerous components was not a "weapon" under § 45-2-101(76), MCA, (later renumbered as subsection (78)). Virtually the only portion of *R.L.S.* that is inapposite to the case before us is its holding. In *R.L.S.*, we explained that our role in construing a statutory definition is "to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted." We continued that "[w]here the language is clear and unambiguous, the statute speaks for itself and we will not resort to other means of interpretation." *R.L.S.*, ¶ 8. Lastly, we concluded that "a device is a weapon under the plain meaning of § 45-2-101[78], MCA, if it is easily able to produce death or serious bodily injury." *R.L.S.*, ¶ 9. In *R.L.S.*, the fake bomb did not satisfy this definition. In the case before us, an operable cigarette lighter containing fuel and being used as a device to inflict pain or injury on "M," and threatened to be used by "J" on his little brother, does satisfy this definition. The District Court did not err when it so concluded.

¶15     Lastly, "J" disingenuously maintains that because he did not actually inflict "serious bodily injury" on "M," he cannot be guilty of assault with a weapon. "J" is confusing assault with a weapon with the crime of aggravated assault, § 45-5-202, MCA, which requires the assailant to purposely or knowingly cause serious bodily injury to another. For one to violate the assault with a weapon statute, § 45-5-213(1)(b), MCA, one need only purposely or knowingly cause the victim "reasonable apprehension of serious bodily injury" by use of a weapon or what reasonably appears to be a weapon. In *R.L.S.*, we explained that reasonable apprehension of a victim pertains to "whether the victim reasonably believes he or she will be seriously bodily injured, not whether he or she subjectively believes that the device or instrument used by the assailant is actually a weapon." *R.L.S.*, ¶ 14. In the case before us, it is undisputed that both "M" and "J's" four-year old brother who witnessed "J" burning "M" viewed the hot lighter as a weapon and were frightened for their safety. The four-year old even expressed fear for his younger brother's safety. Whether such young children can intellectually distinguish fear of "serious bodily injury" as defined by the statute from fear of other obviously painful physical injury is irrelevant. There is no dispute that these children were in reasonable apprehension of what they rightfully considered to be "serious bodily injury."

**CONCLUSION**

¶16    For the foregoing reasons, we affirm the District Court.


/S/ PATRICIA O. COTTER

We Concur:

/S/ JAMES C. NELSON
/S/ JOHN WARNER
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE