**FILED**

07/08/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 23-0633

DA 23-0633

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 142

STATE OF MONTANA,

       Plaintiff and Appellee,

  v.

DAVID RAY SCHULTZ,

       Defendant and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DC-21-1380
Honorable Ashley Harada, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Melinda A. Driscoll, Plath Kemmick Law, LLC, Billings, Montana

      For Appellee:

          Austin Knudsen, Montana Attorney General, Brad Fjeldheim, Assistant
Attorney General, Helena, Montana

          Scott Twito, Yellowstone County Attorney, John M. Ryan, Deputy
County Attorney, Billings, Montana

Submitted on Briefs:  January 15, 2025

Decided:  July 8, 2025

Filed:

_____
                  Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1    David Ray Schultz (Schultz) appeals from a September 26, 2023 judgment of the Thirteenth Judicial District Court, sentencing Schultz to 100 years at Montana State Prison (MSP) and imposing a mandatory 25-year parole restriction pursuant to § 45-5-625(4)(a), MCA (2021).[1]  The District Court denied Schultz's motion to strike the mandatory minimum, required when "the victim was 12 years of age or younger and the offender was 18 years of age or older at the time of the offense."  Section 45-5-625(4)(a), MCA.  We reverse and remand for resentencing consistent with this Opinion.

¶2    We restate the issue on appeal as follows:

*Whether the district court is required to sentence an offender to the mandatory minimum sentence for sexual child abuse when the offender attempted to commit the offense with an adult undercover law enforcement officer posing as a 12-year-old child.*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3    On October 28, 2021, Schultz responded to a profile on an adult website for a woman offering sexual services.  A homeland security undercover agent had posted the advertisement.  The woman also offered services including sexual contact with two young girls, one 12 years old and one 14 years old.  Schultz agreed to make a cash donation in exchange for time with the girls.  Schultz traveled to an agreed-upon hotel on October 29 intending to meet with the girls to engage in sexual conduct.  Law enforcement met Schultz at the agreed location and arrested him.

---

[1] All statutes referenced in this Opinion are to the 2021 Montana Code Annotated.

2

¶4 The State charged Schultz with two counts of Sexual Abuse of Children pursuant to § 45-5-625(1)(h), MCA, for knowingly traveling within, from, or to the state of Montana with the intention of meeting a child under 16 years of age or a person he believed to be a child under 16 years of age in order to engage in sexual conduct, actual or simulated. Count I sought a mandatory penalty enhancement of 25 years in prison without parole, due to the victim being 12 years old or younger. Section 45-5-625(4)(a), MCA. Count II sought a mandatory penalty enhancement of 4 years in prison, due to the victim being under the age of 16. Section 45-5-625(2)(b), MCA.

¶5 Schultz filed a motion to strike the sentencing enhancements, arguing the facts of this case do not trigger the mandatory sentence based on a "victim's" age because no actual victim was alleged, nor did one exist. The State then filed an Amended Information charging Schultz with two counts of *Attempted* Sexual Abuse of Children pursuant to §§ 45-4-103 and 45-5-625(1)(h), MCA. The State also argued the sentencing enhancements apply even when no actual child victim exists. After a hearing and supplemental briefing by Schultz, the District Court denied Schultz's motion.

¶6 Schultz thereafter pleaded guilty to one count of Attempted Sexual Abuse of Children, in which he believed he was traveling to meet a 12-year-old girl. Schultz reserved his right to appeal the court's denial of his motion to strike the sentencing enhancement. The State agreed to dismiss Count II, which alleged Attempted Sexual Abuse of Children toward the fictional 14-year-old girl, and agreed to recommend a sentence on Count I of 100 years in MSP with 75 years suspended and the 25-year mandatory parole restriction pursuant to § 45-5-625(4)(a), MCA. The District Court

3

imposed the State's recommended sentence.[2]  Schultz appeals the court's denial of his motion to strike the sentence enhancement where "the victim was 12 years of age or younger."

## STANDARD OF REVIEW

¶7     We review a sentence for legality only.  *State v. Hinshaw*, 2018 MT 49, ¶ 7, 390 Mont. 372, 414 P.3d 271.  "Our review is confined to determining whether the sentencing court had statutory authority to impose the sentence, whether the sentence falls within the parameters set by the applicable sentencing statutes, and whether the court adhered to the affirmative mandates of the applicable sentencing statutes."  *Hinshaw*, ¶ 7 (quotation omitted).  The interpretation and construction of statutory language is a matter of law which we review de novo, determining whether the district court's interpretation and construction is correct.  *Reichert v. State*, 2012 MT 111, ¶ 19, 365 Mont. 92, 278 P.3d 455.

## DISCUSSION

¶8     The issue before the Court is relatively simple and concerns a straightforward interpretation of a statute's clear language.  We begin by noting that the most basic premise of statutory construction requires this Court to ascertain and declare what is in terms or in substance contained within the statute.  Section 1-2-101, MCA.  "[W]e may not 'insert

---

[2] The court's written judgment purports to impose the 25-year parole restriction pursuant to the court's discretionary authority under § 46-18-202(2), MCA.  However, the oral pronouncement of sentence made clear the court was imposing it pursuant to § 45-5-625(4)(a), MCA.  When the oral pronouncement of sentence and the written judgment conflict, the oral pronouncement controls. *State v. Johnson*, 2024 MT 306, ¶ 30, 419 Mont. 366, 560 P.3d 1219.

4

what has been omitted, or . . . omit what has been inserted.'" *State ex rel. Kurth v. Grinde*, 96 Mont. 608, 614, 32 P.2d 15, 17 (1934) (quoting § 10519, RCM (1921) (now § 1-2-101, MCA)); *Ellison v. State*, 2013 MT 376, ¶ 11, 373 Mont. 159, 315 P.3d 950.

¶9      All statutory analysis looks to the plain language as written to ascertain legislative intent and to give effect to legislative objectives. *State v. Garcia*, 2025 MT 25, ¶ 13, 420 Mont. 283, 563 P.3d 277; *State v. Heath*, 2004 MT 126, ¶¶ 24–25, 321 Mont. 280, 90 P.3d 426. Legislative intent "is to be ascertained, in the first instance, from the plain meaning of the words used." *Montana Vending, Inc. v. Coca-Cola Bottling Co.*, 2003 MT 282, ¶ 21, 318 Mont. 1, 78 P.3d 499. "If the intent of the legislature can be determined from the plain meaning of the words used in the statute, the plain meaning controls, and this Court need go no further nor apply any other means of interpretation." *Montana Vending*, ¶ 21 (citing *Gulbrandson v. Carey*, 272 Mont. 494, 500, 901 P.2d 573, 577 (1995)). "It is only when the intent cannot be ascertained from the language of the statute that we examine legislative history." *Gulbrandson*, 272 Mont. at 500, 901 P.2d at 577. When we are construing a statute as a whole, and giving effect to its several sections, our interpretation is a "'holistic endeavor' and must account for the statute's text, language, structure, and object." *City of Missoula v. Fox*, 2019 MT 250, ¶ 18, 397 Mont. 388, 450 P.3d 898 (quoting *Heath*, ¶ 24).

¶10      Sexual Abuse of Children, codified at § 45-5-625, MCA, is an extensive and thorough statute intended to proscribe as many variants as possible of child sexual abuse. It sets forth over thirty subsections and identifies both actual and inchoate offenses.

5

Subsection (1) sets forth the proscribed conduct and defines the offense. The following sections of § 45-5-625(1), MCA, are relevant to internet "sting operations":

> (1) A person commits the offense of sexual abuse of children if the person:
>
> .   .   .
>
> (c) knowingly, by means of communication, including electronic communication or in person, persuades, entices, counsels, coerces, encourages, directs, or procures a child under 16 years of age *or a person the offender believes to be a child under 16 years of age* to engage in sexual conduct, actual or simulated, or to view sexually explicit material or acts for the purpose of inducing or persuading a child to participate in any sexual activity that is illegal;
>
> .   .   .
>
> (h) knowingly travels within, from, or to this state with the intention of meeting a child under 16 years of age *or a person the offender believes to be a child under 16 years of age* in order to engage in sexual conduct, actual or simulated; or
> (i) knowingly coerces, entices, persuades, arranges for, or facilitates a child under 16 years of age *or a person the offender believes to be a child under 16 years of age* to travel within, from, or to this state with the intention of engaging in sexual conduct, actual or simulated.

(Emphasis added.) The provisions in subsections (1)(c), (1)(h), and (1)(i) that identify the proscribed conduct based on the offender's belief of a child's age do not appear elsewhere in the statute. The Legislature demonstrated its understanding that sting operations and ignorance of age claims were nonetheless criminal offenses when it included persons the offender *believes* to be a child in the definition of the offense. Section 45-5-625(1)(c), (h), (i), MCA (emphasis added).

¶11 A careful reading of the statute's provisions and terms shows that the offense of sexual abuse of children is first defined in subsection (1), and then the commensurate

6

penalties are set forth in subsection (2). All of subsection (1) addresses how the offense of sexual abuse of children can be committed and specifically allows for the situation here with an undercover officer, where the offender believes the child to be under 16. There is no dispute that Schultz committed the offense of sexual abuse of children. Accordingly, the inquiry becomes what is the applicable penalty provision.

¶12 Subsection (2) sets forth the penalty provisions. Section 45-5-625(2), MCA. Subsection (2)(a) establishes the general penalty provision for commission of the offense: "life imprisonment or by imprisonment in the state prison for a term not to exceed 100 years and [a fine of] not more than $10,000." Within subparagraph (2)(a), the Legislature specifically excepted, relevant here, subsections (2)(b) and (4) from the general penalty provision in subparagraph (2)(a), based on age of the victim, without defining "the victim." Thus, when "the victim" is under 16 years of age the enhanced penalty provision is life imprisonment or a term not to exceed 100 years, with a mandatory minimum sentence of 4 years and a fine of not more than $10,000. Section 45-5-625(2)(b), MCA. Another exception to the general penalty provision is contained in subsection (4); when "the victim" is under the age of 12 and the offender is 18 years or older, the sentence is a mandatory 25 years without parole for a term not to exceed 100 years or life. Section 45-5-625(4)(a)(i), MCA.

¶13 Before turning to whether the Legislature meant the phrase "the victim" to include a fictional victim, we note that the Legislature has on several occasions enhanced penalties based on the age of the victim, obviously intending to protect a particular class of victims who have been harmed. In § 45-5-503, MCA, for example, the Legislature defined the

7

proscribed conduct of sexual intercourse without consent in subsection (1) and in subsection (2) set forth the general penalty provision, with exceptions depending on "the victim['s]" age and the age of the offender. *See* §§ 45-5-503(3)-(5), MCA. Likewise, the Legislature, in proscribing sexual assault, defined the conduct constituting the offense in subsection (1). Section 45-5-502(1), MCA. The general penalty provisions are set forth in subsection (2), which are graduated depending on the number of prior sexual assaults. Section 45-5-502(2), MCA. In subsection (3), as here, the Legislature provided for an enhanced penalty based on the age of "the victim." Section 45-5-502(3), MCA. With each of these sentencing enhancement schemes, the Legislature consistently used the specific article ("the") when referring to "the victim." Significantly, only when the Legislature chose to proscribe a sting operation, as here, did it use the general article ("a")—"a child." *See* § 45-5-625(1)(c), (h), (i), MCA. Additionally, within the same statute where it sought to enhance the penalty, it used the specific article ("the")—"the victim"—just as it has done on these other numerous occasions. *See State v. Levine*, 2024 MT 169, ¶ 16, 417 Mont. 410, 553 P.3d 416 (comparing the indefinite article "a," meaning an unspecified person or thing, with the definite article "the," meaning a particular, specified person or thing). "Different language is to be given different construction" in statutory interpretation. *Gregg v. Whitefish City Council*, 2004 MT 262, ¶ 38, 323 Mont. 109, 99 P.3d 151. In explicitly distinguishing between "a child" and "the victim," the Legislature demonstrated an intent to create different consequences for different scenarios. Had the Legislature intended the penalty enhancements to apply equally to scenarios involving fictitious victims—such as sting operations—it could easily have incorporated such explicit language, as it has done

8

in other subsections defining criminal offenses. The clear differentiation of language within the statute indicates a purposeful legislative decision not to apply enhanced sentencing to situations involving fictitious victims. The deliberate inclusion of specific victim language in penalty enhancements demonstrates a clear legislative intent to limit these provisions to circumstances involving actual minors, not fictitious victims.

¶14 The plain language of the statute evinces a clear legislative intent to mandate a harsher punishment for that conduct which has caused harm to younger victims. The specific language used in the statute, its placement within the structure of the statute, the existence of a general penalty provision which captures Schultz's conduct, and specific exceptions to the general penalty consistent with the Legislature's goal of protecting younger victims from harm all support a conclusion that the Legislature intended an actual, specified child be a victim before the mandatory sentencing enhancements could be applied.

¶15 Our conclusion considers the statute as a whole. This Court construes statutes by reading and interpreting them "as a whole, without isolating specific terms from the context in which they are used by the Legislature." *State v. Triplett*, 2008 MT 360, ¶ 25, 346 Mont. 383, 195 P.3d 819 (quotation omitted). We have long held that "[w]hen different language is used in the same connection in different parts of a statute, it is presumed the Legislature intended a different meaning and effect." *In re Kesl's Estate*, 117 Mont. 377, 386, 161 P.2d 641, 645–46 (1945) (quotation omitted); *see also, e.g.*, *Mont. Env't Info. Ctr. v. Mont. Dep't of Pub. Serv. Regul.*, 2024 MT 56, ¶ 59, 415 Mont. 499, 545 P.3d 69. Here, the Legislature used the words "or a person the offender believes to be a child under 16 years

9

of age" three times within the statute to criminalize certain conduct. *See* § 45-5-625(1)(c), (h), (i), MCA. However, when it came to mandatory sentencing enhancements under subsections (2)(b) and (4)(a), the Legislature consistently deviated from this language and chose to use the definite article "the victim" instead. We presume it intended a different meaning and effect. If the Legislature had intended for the mandatory minimums to apply in cases like this, it would have been a simple matter for it to use similar language in the sentencing enhancements. It could also define the term "victim" in subsection (5) to include an undercover law enforcement officer. *See* U.S. Sent'g Guidelines Manual § 2A3.1 cmt. 1 (U.S. Sent'g Comm'n 2024).

¶16    The ordinary usage of "victim" also supports our conclusion. "Except where phrased in technical words and phrases that have acquired a peculiar legal meaning, statutory language must be construed in accordance with the plain meaning of the subject words and phrases in ordinary usage." *City of Great Falls v. Bd. of Comm'rs*, 2024 MT 118, ¶ 19, 416 Mont. 494, 549 P.3d 1158 (citing § 1-2-106, MCA). When a term is not defined by statute, we "may consider dictionary definitions, prior case law, and the larger statutory scheme in which the term appears." *State v. Christensen*, 2020 MT 237, ¶ 95, 401 Mont. 247, 472 P.3d 622. Black's Law Dictionary defines "victim" as "[a] person harmed by a crime, tort, or other wrong." *Victim*, *Black's Law Dictionary* (12th ed. 2024). Similarly, Cambridge Dictionary defines "victim" as "someone or something that has been hurt, damaged, or killed or has suffered, either because of the actions of someone or something else." *Victim*, *Cambridge Dictionary* (Cambridge Univ. Press),

10

https://perma.cc/28Y6-VJ6G. These definitions clearly indicate the defendant has harmed a specific person or is otherwise accountable for intended harm against a specific person.

¶17 The State argues the plain language of the statute shows that each of the offenses can be completed "whether the victim is 'actual or simulated.'" Section 45-5-625(1), MCA. We agree that under subsections (1)(c), (1)(h), and (1)(i), the offender may be found guilty of the offense even if the victim is simulated, and the sexual conduct is simulated. But the application of the penalty enhancement is based upon "the victim" and the victim's age. The statute is clear. Reading the statute as a whole and construing it according to the fair import of its terms, the mandatory sentencing enhancements under § 45-5-625(2)(b), and (4)(a), MCA, do not apply when there was no actual child victim under the specified age. To decide otherwise would require us to "insert what has been omitted" from the statute—i.e., that the sentence enhancements apply if "the victim [*or the person the offender believed to be a child*] was 12 years of age or younger."

¶18 The State also argues the legislative history of § 45-5-625, MCA, supports its construction of the statute. When the statute's plain text is clear, we do not examine legislative history. S*ee Mont. Vending, Inc.*, ¶ 21. Regardless, the State's (and Dissent's, ¶ 42) citations to legislative history do not clearly show that the Legislature intended the sentencing enhancements directed towards "the victim's" age to apply when there was a fictional victim. The State and Dissent correctly note the Legislature crafted "an extremely powerful bill" to protect children from sexual predators and to strengthen the penalties in the 2007 session, including adding the enhanced penalty when "the victim" was 12 years or younger. Section 45-5-625(4), MCA (2007 Mont. Laws ch. 483, § 11). However, it did

11

not clearly tie the increased penalties to crimes involving a fictitious victim, and it would be improper for this Court to extend such authority to a sentencing court because we deem the bill "extremely powerful." The Legislature added the penalty provision to multiple, but not all, sexual crimes that have no similar provision criminalizing conduct directed at someone the offender believed to be a certain age. *See* Sexual Intercourse Without Consent § 45-5-503(4), MCA (2007 Mont. Laws ch. 483, § 5); Incest § 45-5-507(5), MCA (2007 Mont. Laws ch. 483, § 6); Prostitution § 45-5-601(3), MCA (2007 Mont. Laws ch. 483, § 8);[3] Promoting Prostitution § 45-5-602(3), MCA (2007 Mont. Laws ch. 483, § 9); Aggravated Promotion of Prostitution § 45-5-603(2)(c), MCA (2007 Mont. Laws ch. 483, § 10). The Legislature's careful and precise wording in different subsections signifies deliberate intent, which this Court must respect.

¶19    This holding does not give sexual predators a "free pass," nor does it require law enforcement officers to use an actual underage child as bait in undercover operations. When we apply basic rules of statutory interpretation, we conclude "a person the offender believes to be a child under 16 years of age" is not a victim for purposes of sentencing enhancement under the statute. There is no victim under 16 years of age or under 12 years in the instant case. That does not mean Schultz escapes punishment. Schultz is subject to the general penalty provision in § 45-5-625(2)(a), MCA, of a term not to exceed 100 years

---

[3] In 2013, the Legislature amended this mandatory minimum to provide that it applies "whether or not the patron was aware of the child's age." 2013 Mont. Laws ch. 374, § 5. It similarly amended § 45-5-602(3), MCA (2013 Mont. Laws ch. 374, § 6), which was later repealed. 2023 Mont. Laws Ch. 167, § 36. Thus, the Legislature is aware of how to amend sentencing enhancements to apply regardless of an offender's defense.

12

or life imprisonment and may additionally be fined up to $10,000—a provision that reflects liability for the criminal offense Schultz committed but without the enhanced penalty for harm inflicted on an actual child victim of less than 16 years of age. Section 45-5-625(2)(a), MCA. Our holding acknowledges the significant public policy interest in safeguarding minors. Our decision does not create a gap in statutory protection. Defendants who engage with fictitious victims remain subject to severe penalties under existing sentencing provisions.

**CONCLUSION**

¶20 The District Court did not have lawful authority to enhance Schultz's sentence pursuant to § 45-5-625(4), MCA, because the clear language of the statute demonstrates the Legislature did not intend to provide enhanced penalties for fictional victims. The appropriate sentence is "life imprisonment or . . . imprisonment in the state prison for a term not to exceed 100 years" and a fine up to $10,000, pursuant to § 45-5-625(2)(a), MCA. Within that statutory authority, the District Court is "granted broad discretion to determine the appropriate punishment for [the] offense[]." *City of Missoula v. Franklin*, 2018 MT 218, ¶ 6, 392 Mont. 440, 425 P.3d 1285. This decision also respects critical procedural protections inherent in due process, ensuring that a defendant is subject only to a penalty authorized by the Legislature. The Legislature and this Court have consistently emphasized procedural fairness as integral to our justice system, a principle we reaffirm today.

¶21 Reversed and remanded for resentencing consistent with this Opinion.

/S/ LAURIE McKINNON

We Concur:

/S/ INGRID GUSTAFSON
/S/ KATHERINE M BIDEGARAY
/S/ JAMES JEREMIAH SHEA

Chief Justice Cory J. Swanson, specially concurring.

¶22    I disagree the issue "is relatively simple and concerns a straightforward interpretation of a statute's clear language." Opinion, ¶ 8. Nor do I agree the statute "clearly demonstrates that the Legislature intended application of the enhanced sentence to defendants like Schultz." Dissent, ¶ 44. The answer is not simple, because the statute is not clear.

¶23    This case is entirely about how the Legislature wrote the applicable statute, and how this Court discharges its duty to properly construe it. We all cite to the appropriate statutes and caselaw regarding how to interpret the statutory text, but we differ on how to apply them. The task of interpreting criminal statutes is more difficult due to competing guidelines of interpretation. Federal caselaw requires "ambiguous statutes to be interpreted in favor of a defendant" under the so-called "rule of lenity." *State v. Liefert*, 2002 MT 48, ¶ 26, 309 Mont. 19, 43 P.3d 329 (citing *U.S. v. Batchelder*, 442 U.S. 114, 121, 99 S. Ct. 2198, 2203 (1979)). But the Montana Legislature has repealed the "rule of the common law that penal statutes are to be strictly construed," and therefore the rule of lenity is not a Montana statutory requirement. Section 45-1-102(2), MCA. *See, e.g.*, *Ming v. Truett*, 1 Mont. 322, 326 (1871); § 4, Penal Code 1895; *State v. Turner*, 262 Mont. 39, 50,

14

864 P.2d 235, 241 (1993) (overruling *State v. Goodwin*, 249 Mont. 1, 813 P.2d 953 (1991), invoking the rule of lenity).[1] Accordingly, laws on criminal offenses have a general purpose to "give *fair warning* of the nature of the conduct declared to constitute an offense" and "to differentiate on *reasonable grounds* between serious and minor offenses." Section 45-1-102(1)(c)–(d), MCA (emphasis added). Criminal code "provisions are to be construed according to the fair import of their terms with a view to effect its object and to promote justice." Section 45-1-102(2), MCA; *State ex rel. Kurth v. Grinde*, 96 Mont. 608, 614, 32 P.2d 15, 17 (1934).

¶24     Schultz was initially charged with two counts of Sexual Abuse of Children, subsequently amended to Attempted[2] Sexual Abuse of Children, under § 45-5-625(1)(h):

> A person commits the offense of sexual abuse of children if the person:
>
> .   .   .
>
> (h) knowingly travels within, from, or to this state with the intention of meeting a child under 16 years of age *or a person the offender believes to be a child under 16 years of age* in order to engage in sexual conduct, actual or simulated.

---

[1] Regrettably, our caselaw has not been the model of consistency on this point. *See* Angelica Gonzalez, Note, *The Rule of Lenity in the State of Montana: Is There Lenity?*, 79 Mont. L. Rev. 205 (Summer 2018).

[2] Although the State amended the charge and Schultz pleaded guilty to *Attempted* Sexual Abuse of Children, his conduct consummated the offense of Sexual Abuse of Children under § 45-5-625(1)(h), MCA, when he traveled to the meet-up location with the intent to engage in sexual conduct with a person he believed to be a child under the age of 16, and another he believed to be a 12-year-old child. That subsection does not require him to actually engage in sexual conduct with a child to be guilty. *See State v. Hantz*, 2013 MT 311, 372 Mont. 281, 311 P.3d 800.

Section 45-5-625(1)(h), MCA (emphasis added). The State's sentence enhancement for this conviction applied when the "victim" was 12 years old or younger. Section 45-5-625(4)(a), MCA.

¶25 The Majority and Dissent agree the Legislature intended to criminalize Schultz's conduct, even when no actual child victim exists. Opinion, ¶ 11; Dissent, ¶ 35. Attempting to commit the sexual crime against an alleged child who turns out to be an undercover law enforcement officer is still illegal, and the mistake of targeting a law enforcement adult is not a defense. *Hantz*, ¶¶ 3, 12, 29. Thus, enhancing punishment—even when there is only a simulated child—could be consistent with the Legislature's intent to criminalize such conduct.[3] The majority should not give short shrift to that intent and criminal scheme.

¶26 The Dissent is correct subsection (2)(a) "incorporates all varieties of 'the offense of sexual abuse of children' under all subsections [(except subsection (1)(e), which is penalized under subsection (2)(c))] including under either alternate victim scenario in the three luring subsections, thus initially subjecting all offenders under the statute to the same sentence." Dissent, ¶ 36. However, the Dissent then continues to focus on the words

---

[3] The Dissent also aptly points out the commission of these offenses with artificial or computer-generated images. Dissent, ¶ 41. "The technology will soon exist . . . to computer generate realistic images of children." PROTECT Act, Pub. L. No. 108-21, § 501, 117 Stat. 650, 676. That day has undoubtedly arrived, but that case is not before us and we have not yet had the occasion to consider *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 122 S. Ct. 1389 (2002), in this context. *See Griffin v. State*, 2003 MT 267, ¶ 14, 317 Mont. 457, 77 P.3d 545 (declining defendant's arguments pursuant to *Ashcroft* because "the images in Griffin's possession were 'clearly and obviously created by someone actually photographing real children engaging in actual sexual activities with other real children and/or with real adults'"); *see also United States v. Williams*, 553 U.S. 285, 293, 128 S. Ct. 1830, 1838–39 (2008) (distinguishing between laws which criminalize possession of child pornography and those which criminalize solicitation of child pornography, even if no such pornography ever existed). However, this is all a discussion for another day in the context of a justiciable controversy.

16

"convicted of the offense of sexual abuse of children" while ignoring the preliminary conditional language ("*if the victim*" is a certain age or younger) required for an enhanced sentence under subsections (2)(b) and (4)(a). The statute does not embody the uniformity described by the Dissent; it uses different language in the sections criminalizing certain conduct versus the sections enhancing penalties for the age of the victim. We are thus left with an ill-fitting statute susceptible to two different (and arguably reasonable) interpretations. While I agree with much of the Majority's analysis to that end, I would not conclude the examination there. Instead, other persuasive authorities guide me to conclude the sentence enhancement applies when there is an actual child victim or attempted victim under the requisite age listed in the statute.

¶27    First, we look to federal law. In defending the sentencing enhancement, the District Court and State relied on federal cases that are less helpful than one would hope. They merely affirm what we have all agreed: a defendant may complete this crime even when a fictitious child is used in a sting operation. *E.g.*, *United States v. Saldaña-Rivera*, 914 F.3d 721, 723 (1st Cir. 2019); *United States v. Gagliardi*, 506 F.3d 140, 143, 145 (2d Cir. 2007) (collecting cases); *accord Hantz,* ¶ 29.

¶28    The only decision the District Court cited with a similar sentencing issue was *United States v. Angwin*, 560 F.3d 549 (6th Cir. 2009). There, Angwin communicated with an undercover agent who posed as a mother offering her 7-year-old daughter for sex with Angwin. *Angwin*, 560 F.3d at 550. Angwin argued the sentence enhancement should not apply to him, because there was not an actual child victim. The Sixth Circuit Court of Appeals disagreed, relying upon the United States Sentencing Guidelines where

17

"'[v]ictim' includes an undercover law enforcement officer." 18 U.S.C.S. app. § 2A3.1 cmt. 1. Importantly for our analysis, the State concedes *Angwin* is distinguishable from this case because *the federal sentencing guidelines include the definition of victim that Montana statutes lack*. The Legislature has not seen fit to clearly indicate the "victim" language used in § 45-5-625(2)(b), and (4)(a), MCA, includes an undercover law enforcement officer, as federal sentencing guidelines have. This omission cannot be ignored.

¶29 Second, Montana's statutory law includes a similar example of crimes that may be completed even though the facts are not as believed, while a sentencing enhancement requires the proven existence of applicable facts. The offense of Assault with Weapon, pursuant to § 45-5-213(1)(b), MCA, may be completed "by use of a weapon *or what reasonably appears to be a weapon*," which is similar language to that found in subsections (1)(c), (1)(h), or (1)(i). (Emphasis added.) However, for an enhanced sentence "for offenses committed with dangerous weapon" pursuant to § 46-18-221(1), MCA, the offender must have "displayed, brandished, or otherwise used *a* firearm, destructive device, . . . or other dangerous weapon," which is similar to "the victim" language in subsections (2)(b) and (4)(a). (Emphasis added.) We previously held the weapons sentence enhancement "must be analyzed pursuant to an objective test, and that district courts should analyze the weapon itself, not the subjective beliefs and fears of the victim, to determine whether a 'dangerous weapon' was used during the commission of an offense." *State v. Wilson*, 282 Mont. 134, 137, 936 P.2d 316, 318 (1997); *see also State v.*

*Stillsmoking*, 2020 MT 154, ¶¶ 15, 21, 400 Mont. 256, 470 P.3d 183; *State v. Clemo*, 1999 MT 323, ¶ 9, 297 Mont. 316, 992 P.2d 1263.

¶30　This analogous sentence enhancement scheme makes sense when applied to this less-than-clear statute criminalizing sexual abuse of children. A defendant can be convicted for attempting to engage in prohibited sexual conduct with someone whom he believes to be a child under 16, despite the factual impossibility of consummating the sexual act with the adult undercover officer. Section 45-5-625(1)(c), (h), (i), MCA. But, under the plain meaning of the statute, a sentence enhancement for engaging or attempting to engage with a victim requires an objective analysis of whether his conduct or attempt was directed toward an actual child victim, pursuant to § 45-5-625(2)(b), and (4)(a), MCA. Under that analysis, Schultz directed his conduct toward a person he thought was 12 years old or younger, but was actually an adult law enforcement officer. He was properly convicted of the offense, but the sentence enhancement did not apply because there was not a victim or attempted victim under the requisite age.

¶31　The Dissent is correct, it seems odd and inconsistent with the Legislature's goals in passing the legislation. Dissent, ¶ 42. But when we are confronted with disparity between the Legislature's presumed goals and the text of the enacted statute, the text wins the argument. The Legislature can amend the statute to define "victim" and clearly apply the enhanced penalty to law enforcement sting operations, if it so chooses.

¶32　Schultz does not receive a "free pass," as the State argues. Under the plain language of this law's sentencing structure, Schultz "shall be punished by life imprisonment or by imprisonment in the state prison for a term not to exceed 100 years." Section

45-5-625(2)(a), MCA. Additionally, the District Court has authority to impose its own discretionary parole restriction based upon appropriate sentencing factors and the totality of the circumstances. *See* § 46-18-202(2), MCA; *see also State v. Lee*, 2025 MT 30, ¶ 13, 420 Mont. 335, 563 P.3d 731 (affirming sentence as legal where district court imposed a discretionary parole restriction of 25 years pursuant to §§ 45-5-625(2)(a) and 46-18-202(2), MCA). I would remand this case to the District Court to impose an appropriate sentence, and I join the Majority's outcome and instruction to that end.

/S/ CORY J. SWANSON

Justice Jim Rice, dissenting.

¶33 The Court correctly cites the standards of statutory interpretation, but in my view fails to conduct the proper analysis, neglecting to review the statute in its entirety and reasoning that the decision turns on a presumption that the Legislature intended a different meaning between "a" and "the." Opinion, ¶ 15. However, rather, the Legislature structurally applied the enhanced penalty provisions to all offenses under the statute, and then explicitly exempted the offenses to which the enhanced provisions do not apply. Although unnecessary to consider, legislative history confirms the Legislature's intention.

¶34 "Statutory construction is a 'holistic endeavor' and must account for the statute's text, language, structure, and object." *Heath*, ¶ 24. The statute at issue is lengthy but consideration of the whole illustrates the clear framework enacted by the Legislature which resolves the question here in favor of the State's argument. The statute states as follows:

**45-5-625. Sexual Abuse of Children.**
(1) A person commits the offense of sexual abuse of children if the person:

20

(a) knowingly employs, uses, or permits the employment or use of a child in an exhibition of sexual conduct, actual or simulated;

(b) knowingly photographs, films, videotapes, develops or duplicates the photographs, films, or videotapes, or records a child engaging in sexual conduct, actual or simulated;

(c) knowingly, by any means of communication, including electronic communication or in person, persuades, entices, counsels, coerces, encourages, directs, or procures a child under 16 years of age or a person the offender believes to be a child under 16 years of age to engage in sexual conduct, actual or simulated, or to view sexually explicit material or acts for the purpose of inducing or persuading a child to participate in any sexual activity that is illegal;

(d) knowingly processes, develops, prints, publishes, transports, distributes, sells, exhibits, or advertises any visual or print medium, including a medium by use of electronic communication in which a child is engaged in sexual conduct, actual or simulated;

(e) knowingly possesses any visual or print medium, including a medium by use of electronic communication in which a child is engaged in sexual conduct, actual or simulated;

(f) finances any of the activities described in subsections (1)(a) through (1)(d) and (1)(g), knowing that the activity is of the nature described in those subsections;

(g) possesses with intent to sell any visual or print medium, including a medium by use of electronic communication in which a child is engaged in sexual conduct, actual or simulated;

(h) knowingly travels within, from, or to this state with the intention of meeting a child under 16 years of age or a person the offender believes to be a child under 16 years of age in order to engage in sexual conduct, actual or simulated; or

(i) knowingly coerces, entices, persuades, arranges for, or facilitates a child under 16 years of age or a person the offender believes to be a child under 16 years of age to travel within, from, or to this state with the intention of engaging in sexual conduct, actual or simulated.

(2)

(a) Except as provided in subsection (2)(b), (2)(c), or (4), a person convicted of the offense of sexual abuse of children shall be punished by life imprisonment or by imprisonment in the state prison for a term not to exceed 100 years and may be fined not more than $10,000.

(b) Except as provided in 46-18-219, if the victim is under 16 years of age, a person convicted of the offense of sexual abuse of children shall be punished by life imprisonment or by imprisonment in the state prison for a term of not less than 4 years or more than 100 years and may be fined not more than $10,000.

(c) Except as provided in 46-18-219, a person convicted of the offense of sexual abuse of children for the possession of material, as provided in subsection (1)(e), shall be fined not to exceed $10,000 or be imprisoned in the state prison for a term not to exceed 10 years, or both.

(3) An offense is not committed under subsections (1)(d) through (1)(g) if the visual or print medium is processed, developed, printed, published, transported, distributed, sold, possessed, or possessed with intent to sell, or if the activity is financed, as part of a sexual offender information or treatment course or program conducted or approved by the department of corrections.

(4)

(a) If the victim was 12 years of age or younger and the offender was 18 years of age or older at the time of the offense, the offender:

(i) shall be punished by imprisonment in a state prison for a term of 100 years. The court may not suspend execution or defer imposition of the first 25 years of a sentence of imprisonment imposed under this subsection (4)(a)(i) except as provided in 46-18-222(1) through (5), and during the first 25 years of imprisonment, the offender is not eligible for parole. The exception provided in 46-18-222(6) does not apply.

(ii) may be fined an amount not to exceed $50,000; and

(iii) shall be ordered to enroll in and successfully complete the educational phase and the cognitive and behavioral phase of a sexual offender treatment program provided or approved by the department of corrections.

(b) If the offender is released after the mandatory minimum period of imprisonment, the offender is subject to supervision by the department of corrections for the remainder of the offender's life and shall participate in the program for continuous, satellite-based monitoring provided for in 46-23-1010.

(5) As used in this section, the following definitions apply:

(a) "Electronic communication" means a sign, signal, writing, image, sound, data, or intelligence of any nature transmitted or created in whole or in part by a wire, radio, electromagnetic, photoelectronic, or photo-optical system.

(b) "Sexual conduct" means:

(i) actual or simulated:

(A) sexual intercourse, whether between persons of the same or opposite sex, as defined in 1-1-201;

(B) penetration of the vagina or rectum by any object, except when done as part of a recognized medical procedure;

(C) bestiality;

(D) masturbation;

(E) sadomasochistic abuse;

(F) lewd exhibition of the genitals, breasts, pubic or rectal area, or other intimate parts of any person; or

(G) defecation or urination for the purpose of the sexual stimulation of the viewer; or

(ii) depiction of a child in the nude or in a state of partial undress with the purpose to abuse, humiliate, harass, or degrade the child or to arouse or gratify the person's own sexual response or desire or the sexual response or desire of any person.

(c) "Simulated" means any depicting of the genitals or pubic or rectal area that gives the appearance of sexual conduct or incipient sexual conduct.

(d) "Visual medium" means:

(i) any film, photograph, videotape, negative, slide, or photographic reproduction that contains or incorporates in any manner any film, photograph, videotape, negative, or slide; or

(ii) any disk, diskette, or other physical media that allows an image to be displayed on a computer or other video screen and any image transmitted to a computer or other video screen by telephone line, cable, satellite transmission, or other method.

¶35    Section (1) of the statute defines the different ways in which a person can commit "the offense of sexual abuse of children."  These words—"the offense of sexual abuse of children"—reiterate the title of the statute and constitute a key phrase that is used repeatedly throughout the statute.  The phrase "the offense of sexual abuse of children" incorporates in nine subsections the multiple ways the offense can be committed, including three subsections that describe enticing or "luring" offenses, subsections (1)(c), (1)(h), and (1)(i).  Under these "luring" subsections, a person can commit the offense of sexual abuse of children under each subsection by acting in multiple different ways toward two different victim situations: either with 1) "a child under 16 years of age" or 2) "a person the offender believes to be a child under 16 years of age."  Importantly, these luring subsections, whether involving a "child" victim or a "person believed" victim, are all included within and likewise constitute "the offense of sexual abuse of children."

23

¶36 Then, section (2), subsection (a), provides that, except as otherwise provided in subsections (2)(b) and (2)(c), or in section (4), provisions discussed below, "a person *convicted of the offense of sexual abuse of children* shall be punished by life imprisonment or by imprisonment in the state prison for a term not to exceed 100 years and may be fined not more than $10,000." Section 45-5-625(2)(a), MCA (emphasis added). Thus, this penalty section incorporates all varieties of "the offense of sexual abuse of children" under all subsections, including under either alternate victim scenario in the three luring subsections, thus initially subjecting all offenders under the statute to the same sentence. Importantly, the Legislature did not here distinguish between the alternate victim scenarios under the luring subsections—that is, between persons convicted of acting toward an actual "child" victim under 16 years of age, and those convicted of acting toward a "person" victim believed to be under 16 years of age. Rather, these alternate victim scenarios under the luring subsections constitute the offense of sexual abuse of children and all offenders are subject to the same sentence. As discussed below, the Legislature would later make this distinction.

¶37 Then, section (2), subsection (b), provides that "if the victim is under 16 years of age, a person *convicted of the offense of sexual abuse of children* shall be punished by life imprisonment or by imprisonment in the state prison for a term of not less than 4 years or more than 100 years and may be fined not more than $10,000." Section 45-5-625(2)(b), MCA (emphasis added). The Court overlooks, first, that this provision has been made applicable to all persons convicted of "the offense of sexual abuse of children," including under all nine subsections defining the offense and both alternate victim scenarios under

24

the three luring subsections. No carve-out is here made for any individual offenses because the subsection is explicitly applicable to *all* offenses, including the luring subsections with their "person" victim alternate scenarios. While the Legislature used the word "victim" here instead of the words "child" and "person," that does not mean the Legislature carved out any particular *offense* from the statute's application. Rather, the plain language indicates it provided a mandatory minimum sentence for a conviction under *any* subsection that involved a victim less than 16 years of age. The Court apparently fails to comprehend that this provision does not apply *only* to the three luring subsections. While the luring subsections do reference victims under the age of 16, the other subsections could also involve victims under the age of 16, and the mandatory minimum penalty should likewise be applicable to those offenses. This phrase, and this provision, thus applies to all subsections, including the luring subsection alternative crimes.

¶38 Then, with wording that is clear, explicit, and unquestionable, the Legislature carved out from the general applicability of the enhanced penalty those identified offenses that it wished to receive a different sentence. In section (2), subsection (c), the Legislature provided that a person convicted of "the offense of sexual abuse of children *for the possession of material, as provided in subsection (1)(e)*," shall receive a lesser sentence. Section 45-5-625(2)(c), MCA (emphasis added). Thus, the Legislature employed very specific, intentional language to carve out the offenses from the umbrella "offense of sexual abuse of children" that it wanted to receive a different sentence. In contrast, it did not do so in section (2), subsection (b). As the State correctly argues, "[n]othing in the statute

25

requires an actual victim to be lured to a sexual encounter for the increased penalty tiers to apply."

¶39 Schultz cites a district court opinion that held, about this statute, "[i]f the legislature had intended for the mandatory minimum . . . to apply not only to actual victims of less than 16 but also to 'a person the offender believes to be a child under 16 years of age' the legislature would have added this language . . . as it did in subsections 1(c), (h) and (i) of the very same statute." *See* Opinion and Order at 16, *State v. Phillips*, No. DC-22-689 (Mont. Fourth Judicial Dist. April 10, 2023). However, the district court got it exactly backwards. By the text and structure discussed above, the Legislature explicitly applied the mandatory minimum to all offenses under the umbrella "the offense of sexual abuse of children," knowing that it could carve out offenses thereunder to receive a different sentence if it wanted to. And it explicitly did so in section (2), subsection (c).

¶40 The Court wrestles with the undefined word "victim," and then reads dispositive meaning into this single word that the Legislature did not provide, reaching the unrealistic conclusion that the Legislature's use of this word somehow eliminated the mandatory minimum sentence to an entire sub-group of offenses. The broader term "victim" simply comports with the fact that "the offense of sexual abuse of children" includes nine subsections that include both "child" victims and "person believed" victims. Schultz argues that the enhanced penalty cannot apply "because there is no victim," but that is incorrect; the luring subsections were written to incorporate as the targeted victim a *person* believed "to be a child under 16 years of age." Thus, whether law enforcement engages a defendant by way of a 43-year-old male officer alone or by way of a 22-year-old female

officer posing as the 15-year-old child who has reported defendant's attempt to lure her to law enforcement, the provision applies to all victim scenarios.

¶41 It should be noted that "the offense of sexual abuse of children" is repeatedly made to apply to both "actual or simulated," including in the luring subsections. The proliferation of artificial intelligence and computer-generated imagery will result in cases involving the simulation of the entire act, including the victim. As the State argues, "[t]hese offenses are inchoate on their terms and do not require an actual victim." And here, the State charged the offenses as attempted, further eliminating the need for an actual child victim in the proof of the case.

¶42 Having resolved the Legislature's intention for section (2), subsection (b), the proper interpretation of section (4) follows. The entirety of this section was added to the pre-existing provisions of statute in 2007, with the passage of SB 547. *See* 2007 Mont. Laws ch. 483. Without distinguishing between any of the existing subsections of the statute, the legislation provided that "[i]f the victim was 12 years of age or younger and the offender was 18 years of age or older at the time of the offense," the enhanced sentence, including mandatory minimums, would apply. 2007 Mont. Laws ch. 483, § 11. Thus, like subsection (2), subsection (4) was made to apply to all categories of the offense of sexual abuse of children, whenever the stated age conditions of the victim and offender are satisfied by the case. This was properly applied to Schultz.

¶43 I would stop with this analysis of the statute's text and structure, and affirm. It is of note, however, that the legislative history of SB 547, introduced to strengthen the penalties for child abuse crimes, includes the bill's sponsor's floor explanation advising the Senate

27

that the legislation was "an extremely powerful bill" that increased penalties for the crime committed against children under the age of 16, and added, "we've already allowed law enforcement officers to act as decoys." *Senate Floor Session*: Hearing on S. B. 547, 60th Leg. 13:45:50-13:46:55 (Mont. 2007). Clearly, the State Senate was advised that the increased penalties enacted by the bill would be applicable to cases involving police decoys, as here.

¶44 In my view, hanging this case on the difference between articles "a" and "the" is incorrect and fails to consider the entire framework of the statute that is available to us, which clearly demonstrates that the Legislature intended application of the enhanced sentence to defendants like Schultz.

¶45 I would affirm.


/S/ JIM RICE


Justice Beth Baker joins in the dissenting Opinion of Justice Jim Rice.


/S/ BETH BAKER